IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No. 11-04386 |
| | ) | |
| FAIRVIEW MINISTRIES, INC., *et al.*,[1] | ) | Hon. Susan Pierson Sonderby |
| | ) | Chapter 11 |
| | ) | Jointly Administered |
| Debtors. | ) | |
| | ) | |

**FINAL ORDER (1) AUTHORIZING DEBTORS IN POSSESSION
TO OBTAIN POSTPETITION FINANCING; (2) AUTHORIZING USE
OF CASH COLLATERAL; (3) PROVIDING ADEQUATE
PROTECTION; AND (4) GRANTING LIENS, SECURITY
INTERESTS AND SUPERPRIORITY CLAIMS**

Upon the motion (the "Motion") of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for the entry of an interim order (as entered by the Bankruptcy Court on February 9, 2011 [Docket No. 45], the "Interim Order") and a final order in form and substance reasonably satisfactory to the Postpetition Agent, the Postpetition Lenders and the Master Trustee (as each such term is defined herein) (this "Final Order") pursuant to sections 361, 362, 363 and 364 of title 11 of the United States Code (the "Bankruptcy Code") and Federal Rule of Bankruptcy Procedure 4001 authorizing them to (i) obtain postpetition financing pursuant to sections 363 and 364 of the Bankruptcy Code from Bank of America, National Association ("BAC"), as agent (in such capacity, the "Postpetition Agent"), for one or more lenders (collectively, the "Postpetition Lenders"), subject to the terms and conditions set forth herein; (ii) to use certain Cash Collateral (as defined below) of the Postpetition Agent

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are Fairview Ministries, Inc. (2067), Fairview Village (2068), Fairview Baptist Home, d/b/a Fairview Center for Health & Wellness (9812), Fairview Residence of Rockford, d/b/a Crimson Pointe (8394), and VibrantLiving Communities & Services (1604).

CHI:2497946.8

and/or Wells Fargo Bank, National Association, in its capacity as Master Trustee (the "Master Trustee") for the holders of certain bonds (the "Series 2008 Bonds"); (iii) grant mortgages, security interests, liens and superpriority claims to the Postpetition Agent for the benefit of the Postpetition Lenders (including a superpriority claim pursuant to section 364(c)(1) of the Bankruptcy Code), liens pursuant to sections 364(c)(2) and (3) of the Bankruptcy Code and priming liens pursuant to section 364(d)(1) of the Bankruptcy Code, subject to the terms and conditions set forth herein; and (iv) grant mortgages, security interests, liens and superpriority claims in order to provide adequate protection to the Master Trustee for the use of its Cash Collateral and the priming of its liens; and upon the proceedings held before this Court (including an interim hearing on the Motion on February 8, 2011 and February 9, 2011 (the "Interim Hearing") prior to the entry of the Interim Order and a final hearing on the Motion on March 7, 2011 and March 15, 2011 (the "Final Hearing") and good and sufficient cause appearing therefor;

**THE COURT HEREBY FINDS:**

A.  On February 4, 2011 (the "Petition Date"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code and thereby commenced a case thereunder (collectively, the "Chapter 11 Cases"). The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request has been made for the appointment of a trustee or examiner in the Chapter 11 Cases. An official committee of unsecured creditors (the "Committee") was appointed in the Chapter 11 Cases on March 4, 2011. Pursuant to an order of the Court entered as of the date hereof, the Chapter 11 Cases are being jointly administered.

B.  This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue of the Chapter 11 Cases and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

C.  The Debtors admit, acknowledge and agree that the Illinois Finance Authority (together with its permitted successors and assigns, the "Issuer") issued its (a) $19,735,000 Revenue Refunding Bonds, Series 2008A (Fairview Obligated Group) (the "Series 2008A Bonds"), (b) $3,000,000 Revenue Refunding Bonds, Series 2008B-1 (Fairview Obligated Group) Extendable Rate Adjustable Securities (EXTRAS) (the "Series 2008B-1 Bonds") and (c) $2,000,000 Revenue Refunding Bonds, Series 2008B-2 (Fairview Obligated Group) Extendable Rate Adjustable Securities (EXTRAS) (the "Series 2008B-2 Bonds"), in each case, for the purposes set forth in that certain Bond Trust Indenture dated as of January 1, 2008 (the "Series 2008A/B Bond Indenture") between the Issuer and Wells Fargo Bank, National Association, as indenture trustee (together with its successors as trustee, the "Series 2008A/B Trustee").

D.  The Debtors admit, acknowledge and agree that the Issuer issued its $21,795,000 Variable Rate Demand Revenue Refunding Bonds, Series 2008C (Fairview Obligated Group)

(the "Series 2008C Bonds") for the purposes set forth in that certain Bond Trust Indenture dated as of January 1, 2008 (the "Series 2008C Bond Indenture") between the Issuer and Wells Fargo Bank, National Association, as trustee (together with its successors as trustee, the "Series 2008C Trustee").

E.     The Debtors admit, acknowledge and agree that the Issuer issued its $4,455,000 Variable Rate Demand Taxable Revenue Refunding Bonds, Series 2008D (Fairview Obligated Group) (the "Series 2008D Bonds") for the purposes set forth in that certain Bond Trust Indenture dated as of January 1, 2008 (the "Series 2008D/E Bond Indenture" and, together with the Series 2008C Bond Indenture, the "Variable Rate Bond Indentures"), between the Issuer and Wells Fargo Bank, National Association, as trustee (together with its successors as trustee, the "Series 2008D/E Bond Trustee"; and together with the Series 2008A/B Trustee and Series 2008C Trustee, the "Trustee").

F.     The Debtors admit, acknowledge and agree that the Issuer issued its $6,250,000 Variable Rate Demand Taxable Revenue Refunding Bonds, Series 2008E (Fairview Obligated Group) for the purposes set forth in the Series 2008D/E Bond Indenture (the "Series 2008E Bonds" and, together with the Series 2008A/B Bonds, the Series 2008C Bonds and the Series 2008D Bonds, the "Series 2008 Bonds"). The Series A/B Indenture, together with the Variable Rate Bond Indenture, shall be defined collectively as the "Indentures."

G.     The Debtors admit, acknowledge and agree that the Series 2008 Bonds were issued to provide funds to assist in financing a portion of the costs of the (i) acquisition, purchase, construction and installation of renovations and improvements of real and personal property of the Debtors, and (ii) refunding those certain Series 2004 Bonds (as defined in the Master Indenture). The Issuer loaned the proceeds of the Bonds to the Fairview Obligated Group

CHI:2497946.8

under certain direct note obligations (collectively, the "Notes"; such loans, the "Prepetition Loans") and pursuant to certain loan and security agreements for the (i) Series 2008A/B Bonds, (ii) Series 2008C Bonds, and (iii) Series 2008D/E Bonds, each dated as of January 1, 2008, (collectively, the "Loan Agreements"). The Issuer's rights to the payments due under the Loan Agreements were assigned to the Trustee under the Indentures.

H. The Debtors admit, acknowledge and agree that the certain direct notes were issued pursuant to that certain Second Amended and Restated Master Trust Indenture dated as of January 1, 2008 among the Debtors, as members of the obligated group, and the Master Trustee, as master trustee to evidence the amounts due under the Loan Agreements (the "Master Indenture"; collectively with all documents delivered therewith including but not limited to the Indentures, Notes and Loan Agreements, the "Bond Documents").

I. The Debtors admit, acknowledge and agree that under the terms of the Bond Documents, certain accounts were established and are held by the Master Trustee and/or the Trustee, including, but not limited to, (i) interest funds, (ii) sinking funds, (iii) project funds, and (iv) debt service reserve funds (all as established under the Indentures). The funds in these accounts, and in any other accounts held by the Master Trustee and/or Trustee are referred to herein as the "Trustee-Held Funds." The Debtors, Postpetition Agent and Postpetition Lenders, each for itself and its respective successors and assigns, acknowledge and agree that it has no interest in any of the Trustee-Held Funds and such Trustee-Held Funds are not property of the Debtors' bankruptcy estates.

J. The Debtors admit, acknowledge and agree that, pursuant to the Bond Documents, the Debtors were, as of the Petition Date, jointly and severally indebted to the Master Trustee, on account of the Prepetition Indebtedness (as defined herein), inclusive of

accrued but unpaid interest, costs, fees and expenses, in the approximate amount of (x) not less than $56,835,000 in principal under the Prepetition Loans and (y) all accrued but unpaid interest, fees, costs and expenses incurred by the Master Trustee under the Bond Documents or any other related document and all indemnification rights or claims the Master Trustee has or may have under the Master Indenture (all such interest, fees, costs, expenses and indemnification rights or claims, the "Master Indenture Expenses").

K. The Debtors admit, acknowledge and agree that, pursuant to that certain Letter of Credit Agreement dated as of January 1, 2008 (the "LC Agreement") among the Debtors, as members of the obligated group, and BAC, as successor-by-merger to LaSalle Bank National Association, BAC issued three irrevocable transferable direct pay letters of credit providing credit support with respect to certain of the Series 2008 Bonds and made certain other financial accommodations to the Debtors. Hinsdale Bank and Trust Co. ("Hinsdale"; and together with BAC, the "LC Lenders") is a participant in certain of the rights and obligations of BAC under the LC Agreement.

L. The Debtors admit, acknowledge and agree that, pursuant to the LC Agreement, the Debtors were, as of the Petition Date, jointly and severally indebted to BAC (for itself and for Hinsdale), inclusive of accrued but unpaid interest, costs, fees and expenses, in the approximate amount of (x) not less than $32,924,045 in contingent principal liability under the LC Agreement and (y) all accrued but unpaid interest, fees, costs and expenses incurred by BAC and Hinsdale pursuant to the LC Agreement (together with all principal due under the LC Agreement, the "LC Obligations"; together with the Prepetition Loans and Master Indenture Expenses, the "Prepetition Indebtedness"). For purposes of this Final Order, the term "Prepetition Indebtedness" shall mean and include, without duplication, any and all amounts

owing or outstanding under the Series 2008 Bonds (including, without limitation, all "Obligations" as defined in the Master Indenture and all obligations outstanding under the LC Agreement, in each case whether incurred prepetition or postpetition), including all loans, advances, debts, liabilities, principal, accrued or hereafter accruing interest, fees, costs, charges, expenses (including, without limitation, any and all attorneys', accountants', appraisers' and financial advisors' fees and expenses that are chargeable, reimbursable or otherwise payable under the Master Indenture or LC Agreement) and obligations for the performance of covenants, tasks or duties, or for the payment of monetary amounts owing to the Master Trustee, BAC or Hinsdale by the Debtors, of any kind or nature, whether or not evidenced by any note, agreement or other instrument, and whether or not contingent or otherwise.

M.  To secure the repayment of Prepetition Indebtedness, the Debtors admit, acknowledge and agree that they granted to the Master Trustee, and that the Master Trustee holds, pursuant to the Bond Documents (including for the avoidance of doubt, the Master Indenture and that certain Amended and Restated Mortgage and Security Agreement, dated as of January 1, 2008, by and between the Debtors and the Master Trustee), mortgages, pledges, liens and security interests in substantially all of their real property assets located in Rockford, Illinois ("Rockford") and Downers Grove, Illinois ("Downers Grove" and together with Rockford, the "Debtors' Real Property"), all personal property of the Debtors located on the Debtors' Real Property, all accounts, rights to payment evidenced by chattel paper and assignable general intangibles now owned or ever acquired, and the proceeds, products, rents, profits, judgments, damages, settlements or other compensation related to the foregoing (all of the foregoing assets generally described above, together with all of the proceeds, products, rents and profits thereof

CHI:2497946.8

shall be referred to herein collectively as the "Prepetition Collateral," and such mortgages, pledges, liens and security interests shall be referred to herein as the "Prepetition Liens").

N. The Debtors admit, acknowledge and agree that the Prepetition Liens constitute first-priority, valid, binding, enforceable and perfected mortgages, pledges, liens and security interests subject only to the Postpetition Liens (as defined below); Permitted Encumbrances (as defined below); the Adequate Protection Liens (as defined below); the 507(b) Claim (as defined below); and the Carve-Out. The Debtors acknowledge and agree that the Prepetition Indebtedness constitutes a legal, valid and binding obligation of the Debtors, enforceable in accordance with its terms (other than in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code), that no offsets, defenses or counterclaims to the Prepetition Indebtedness exist and that no portion of the Prepetition Indebtedness is subject to avoidance, recharacterization or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law.

O. A critical need exists for the Debtors to obtain funds in order to continue their operations and maximize the value of their estates for the benefit of all creditors. Without such funds, the Debtors will not be able to pay their payroll and other operating expenses, provide for the safety or care of their residents, repay entrance fee refund obligations to residents and obtain goods and services needed to carry on their operations during this sensitive period for the purposes set forth in this Final Order in a manner that will avoid irreparable harm to the Debtors' estates. At this time, the Debtors' ability to finance their operations and the availability to them of sufficient working capital and liquidity through the incurrence of new indebtedness for borrowed money and other financial accommodations are vital to the confidence of the Debtors' residents, vendors and suppliers of goods and services, and to the preservation and maintenance

CHI:2497946.8

of the going concern value of the Debtors' estates. The Debtors are otherwise unable to obtain the required funds in the form of unsecured credit or unsecured debt allowable under section 503(b)(1) of the Bankruptcy Code, as an administrative expense pursuant to section 364(a) or (b) of the Bankruptcy Code, as unsecured debt having the priority afforded by section 364(c)(1) of the Bankruptcy Code or as debt secured as described in section 364(c)(2) or (3) of the Bankruptcy Code.

P.  The Master Trustee has consented to the use of the Prepetition Collateral, including Cash Collateral (as defined below), by the Debtors on the express terms of this Final Order.

Q.  The Master Trustee has indicated a willingness to consent and agree to the Debtors' entry into the financing arrangements contemplated by this Final Order, and the Postpetition Agent and Postpetition Lenders are willing to provide the additional financing contemplated herein, all subject to the terms and conditions set forth herein, including, the provisions of this Final Order providing that the Postpetition Liens (as defined below), the Adequate Protection Liens (as defined below) and the various claims, superpriority claims and other protections granted pursuant to this Final Order will not be affected by any subsequent reversal or modification of this Final Order or any other order, as provided in section 364(e) of the Bankruptcy Code. The Postpetition Agent, each of the Postpetition Lenders, the Master Trustee and the LC Lenders have acted in good faith in consenting to and in agreeing to the postpetition financing contemplated by this Final Order. The reliance of the Postpetition Agent, each of the Postpetition Lenders, and the Master Trustee on the assurances referred to above is in good faith. Further, in connection with its consent to this Final Order, the Master Trustee exercised its rights and powers and used the same degree of care and skill in its exercise as a

prudent person would exercise or use under the circumstances in the conduct of such person's own affairs; and the Master Trustee acted consistent with its duties and responsibilities under, and entry of the Interim Order and this Final Order does not violate, the terms of any agreement relating to the Series 2008 Bonds.

R. Pursuant to the Bankruptcy Code and in light of the foregoing, the Debtors are required to provide adequate protection to the Master Trustee in respect of their use of the Prepetition Collateral and granting of the priming Postpetition Liens (as defined below).

S. Notice of the entry of the Interim Order and of the Final Hearing has been served by hand, facsimile, overnight mail or courier on: (i) counsel for the Master Trustee; (ii) counsel for BAC; (iii) counsel for Hinsdale; (iv) the entities set forth on the list of the creditors holding the twenty largest unsecured claims against the Debtors (on a consolidated basis); (v) the Office of the United States Trustee; (vi) all secured creditors of the Debtors reflected in public records and of which the Debtors are otherwise aware; (vii) the Internal Revenue Service; (viii) the United States Attorney for the Northern District of Illinois; and (ix) the Office of the Attorney General of the State of Illinois. In addition, notice of the proposed form of this Final Order has been served on (a) the entities set forth on the list of creditors holding the twenty largest unsecured claims against the Debtors (on a consolidated basis); (b) the Office of the United States Trustee; (c) counsel to the Master Trustee; (d) counsel to BAC; (e) counsel to Hinsdale; (f) counsel to the Committee; (g) all secured creditors reflected in public records and of which the Debtors are otherwise aware; (h) the Internal Revenue Service; (i) the United States Attorney for the Northern District of Illinois; (j) the Office of the Attorney General for the State of Illinois; and (k) to any other party that has filed a request for notices with this Court. Such notice complies with Bankruptcy Rule 4001.

T. Good cause has been shown for the entry of this Final Order. Among other things, entry of this Final Order will minimize disruption of the Debtors' businesses and operations and permit them to pay their payroll and other operating expenses, provide for the safety or care of their residents, repay entrance fee refund obligations to residents and obtain goods and services needed to carry on their operations during this sensitive period for the purposes set for in this Final Order. New credit is unavailable to the Debtors without (i) providing the Postpetition Agent, for itself and the Postpetition Lenders, the Postpetition Liens (as defined below) and (ii) concurrently providing for the adequate protection to the Master Trustee on the terms and conditions as set forth herein. Consummation of such financing therefore is in the best interests of the Debtors' estates. Good cause also has been shown for the entry of this Final Order because the Debtors anticipate that they will use the protections of Chapter 11 in order to seek to maximize the value of the Debtors' assets through a going concern sale or other transaction. The Debtors thus believe it is essential that they continue their operations with as little disruption as may be possible under the circumstances in order to preserve and maximize the value of their estates. If the Debtors are not able to obtain financing and to use Cash Collateral as provided herein, they will be unable to fund their ongoing operations pending consummation of a sale. Accordingly, entry of this Final Order is in the best interest of, the Debtors, their creditors and their estates.

U. Substantially all of the value in the Prepetition Collateral rests in the Debtors' Real Property and the businesses operated thereon. For an extended time period prior to the Petition Date, the Debtors have been actively marketing Rockford and Downers Grove (both individually and collectively) for sale on a going concern basis. In the Chapter 11 Cases, the Debtors are seeking the opportunity to complete the marketing of Rockford and Downers Grove

and to sell such assets in a series of transactions pursuant to section 363 of the Bankruptcy Code. The Postpetition Loans will fund, among other things, the marketing process for the sales of Rockford and Downers Grove.

V. The Postpetition Agent, each of the Postpetition Lenders, the Master Trustee, BAC and Hinsdale have acted in good faith in negotiating the postpetition financing and adequate protection arrangements with the Debtors. The terms of such financing and adequate protection arrangements are fair and reasonable under the circumstances, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties and are supported by reasonably equivalent value and fair consideration. As such, the Debtors, the Master Trustee, the LC Lenders and the Postpetition Agent and Postpetition Lenders have acted in "good faith" and are entitled to the protection provided by section 364(e) of the Bankruptcy Code.

W. This Court concludes that entry of this Final Order is in the Debtors' best interests and that of their estates, residents and creditors as its implementation will, among other things, allow for the Debtors to continue their operations.

**THEREFORE, IT IS HEREBY ORDERED THAT:**

**Motion Granted**

1. The Motion is hereby granted in accordance with the terms and conditions set forth in this Final Order and the DIP Credit Documents (as defined below). Any objections to the Motion with respect to the entry of this Final Order that have been withdrawn, waived, or settled, and all reservation of rights included therein, are hereby denied and overruled.

**Authority to Borrow and Spend Money**

2. From and after the Effective Date (as defined below) through the Termination Date (as defined below) and subject to this Final Order's terms and conditions, the Debtors are

CHI:2497946.8

hereby authorized to (a) borrow funds pursuant to the terms, conditions and provisions of this Final Order and that certain Amended and Restated Senior Secured Superpriority Debtor-In-Possession Credit Agreement dated as of February 9, 2011 among the Postpetition Agent, as agent, the Postpetition Lenders, as lenders, and the Debtors, as borrowers (the "Credit Agreement"; collectively with all documents delivered therewith, the "DIP Credit Documents"; a copy of the Credit Agreement is attached as **Exhibit A** to this Final Order and is incorporated herein by reference; the extension of credit and other financial accommodations under the DIP Credit Documents shall be referred to in this Final Order as the "Facility"), in an amount up to $13,700,000 in loans (together with all advances and any other indebtedness or obligations, contingent or absolute which may now or from time to time hereafter be owing by the Debtors to the Postpetition Agent for the ratable benefit of the Postpetition Lenders hereunder or under the DIP Credit Documents, the "Postpetition Loans"); and (b) use Cash Collateral available or made available to the Debtors in accordance herewith; provided, however, that the Debtors shall be authorized to borrow money, use Cash Collateral and spend money solely in compliance with the budget attached hereto as **Exhibit B** and incorporated herein by reference (as it may be amended from time to time with the consent of the Postpetition Agent, the Required Lenders (as defined in the Credit Agreement) and the Master Trustee, the "Budget") and as expressly set forth herein. In addition, the Debtors are hereby authorized to indemnify the Postpetition Agent and the Postpetition Lenders and certain other parties against any liability arising in connection with the Facility to the extent set forth in the DIP Credit Documents. Nothing contained herein shall alter or modify, or be deemed to alter or modify, the Bond Documents (or any other agreement to which the Master Trustee and/or a LC Lender is party). The Postpetition Agent may, at any time, establish a reserve against the available amount of the Facility in an amount as the

CHI:2497946.8

Postpetition Agent determines in its reasonable discretion as being appropriate to reflect unpaid Permitted Fee Expenses (as defined below).

3. Pursuant to sections 361 and 363 of the Bankruptcy Code and the terms and conditions hereof, the Debtors are hereby authorized to (i) borrow Postpetition Loans; and (ii) use cash collateral (as defined in section 363(a) of the Bankruptcy Code) constituting proceeds of the Prepetition Collateral and/or the Postpetition Collateral and made available to them pursuant hereto (the "Cash Collateral"); provided, however, that nothing herein shall entitle or be deemed to entitle the Debtors to use Cash Collateral other than in compliance with the Budget; and provided, further, that no request for Postpetition Loans shall be honored to the extent that, after giving effect to all expenditures to be made with the applicable Postpetition Loan and payment of all outstanding checks and other payments, the sum of (i) Cash Collateral collected by the Debtors and remaining in the possession of the Debtors (such Cash Collateral (excluding, for the avoidance of doubt, the Escrowed Entrance Fees (as defined below) and funds, if any, held by the Debtors in a segregated account for the sole purpose of paying resident refunds), the "Available Cash Collateral"); plus (ii) proceeds of Postpetition Loans in the possession of the Debtors is greater than $325,000.

4. For purposes of this Final Order, "proceeds" of any collateral shall mean proceeds (as defined in the Uniform Commercial Code) of such collateral as well as (i) any and all proceeds of any insurance, indemnity, warranty or guaranty payable to the Debtors from time to time with respect to such collateral, (ii) any and all payments (in any form whatsoever) made or due and payable to the Debtors in connection with any requisition, confiscation, condemnation, seizure or forfeiture of all or any part of such collateral by any governmental body, authority,

CHI:2497946.8

bureau or agency (or any person under color of governmental authority), and (iii) other payments, dividends, interest or other distributions on or in respect of any of such collateral.

5. Any and all payments or proceeds remitted to the Postpetition Agent pursuant to the provisions of this Final Order or otherwise shall be received by the Postpetition Agent (for the benefit of the Postpetition Lenders), as applicable, free and clear of any claim, charge, assessment or other liability, including, without limitation, any such claim or charge arising out of or based on section 552(b) of the Bankruptcy Code, whether directly or indirectly, all of which are hereby waived by the Debtors.

6. The Postpetition Loans shall become due and payable and the Debtors' use of Cash Collateral shall terminate on the Termination Date; provided, however, that, after the issuance of a Termination Notice, use of Prepetition Collateral and Postpetition Collateral shall terminate after expiration of the five (5) Business Day period described in Paragraph 36 of this Final Order; provided, further, that, after expiration of such five (5) Business Day period, the Debtors may use Cash Collateral to pay those costs and expenses described in clause (b) of the definition of "Carve-Out" (subject to the $275,000 amount set forth in such clause (b)) and Prepetition Collateral and Postpetition Collateral, in each case in connection with Resident Health and Safety Purposes (as defined below). From and after the Termination Date, the Debtors shall have no authority to use Prepetition Collateral or Postpetition Collateral (including Cash Collateral) of the Master Trustee, the Postpetition Agent or the Postpetition Lenders unless authorized in writing by the Postpetition Lenders and the Master Trustee or authorized by the Court in accordance with the terms and conditions hereof; provided, however, that, after expiration of the five (5) Business Day period described in Paragraph 36 of this Final Order, the Debtors may use Cash Collateral to pay those costs and expenses described in clause (b) of the

definition of "Carve-Out" (subject to the $275,000 amount set forth in such clause (b)) and Prepetition Collateral and Postpetition Collateral, in each case in connection with Resident Health and Safety Purposes. Notwithstanding anything herein to the contrary, upon the issuance of a Termination Notice, the Postpetition Lenders shall advance a Postpetition Loan (the repayment and other terms and conditions of which shall be as set forth in this Final Order) in the amount of up to $450,000 for use by the Debtors to pay the Debtors' obligations for accrued (as of the date of the issuance of such Termination Notice) and unpaid (as of the date of the issuance of such Termination Notice) payroll, related payroll taxes and other ordinary and customary payroll-related items to the extent such obligations are set forth in the Budget.

**Use of Proceeds**

7. From and after the Effective Date, Postpetition Loans and Cash Collateral shall be used solely in accordance with the Budget: (i) (a) to pay principal, interest, fees and expenses in respect of the Facility to the Postpetition Agent and the Postpetition Lenders in accordance with this Final Order and the DIP Credit Documents, and (b) as and for adequate protection, to pay fees and expenses of the Master Trustee and their professionals to the extent set forth in the Budget (but without limiting the reimbursement claim of the Master Trustee with respect thereto), which fees and expenses shall be reasonable, but which fees and expenses shall not be subject to the approval of this Court; (ii) to provide the Debtors with funds necessary to maintain cash on hand (including Cash Collateral collected by the Debtors and amounts previously funded under the Facility and in the possession of the Debtors and excluding Escrowed Entrance Fees (as defined below) and funds held in segregated accounts for the sole purpose of paying resident refunds) no greater than $1,500,000; (iii) to the extent set forth in the Budget, fund the prepetition and postpetition entrance fee resident refund obligations of the Debtors; (iv) to the