IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In re: | ) Lead Case No. 11-04386 |
| | ) |
| FAIRVIEW MINISTRIES, INC., *et al.*,[1] | ) (Jointly Administered) |
| | ) Hon. Susan Pierson Sonderby |
| Debtors. | ) Chapter 11 |

**AGREED ORDER AMENDING FINAL ORDER (1) AUTHORIZING DEBTOR IN POSSESSION TO OBTAIN POSTPETITION FINANCING; (2) AUTHORIZING USE OF CASH COLLATERAL; (3) PROVIDING ADEQUATE PROTECTION; AND (4) GRANTING LIENS, SECURITY INTERESTS AND SUPERPRIORITY CLAIMS**

WHEREAS, on February 4, 2011, the Debtors filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code in the United States Bankruptcy Court for the Northern District of Illinois (the "Bankruptcy Court");

WHEREAS, on March 16, 2011, the Bankruptcy Court entered the Final Order (1) Authorizing Debtors in Possession to Obtain Postpetition Financing; (2) Authorizing Use of Cash Collateral; (3) Providing Adequate Protection; and (4) Granting Liens, Security Interests and Superpriority Claims [Dkt. 156] (the "Final Cash Collateral Order"[2]);

WHEREAS, pursuant to the Final Cash Collateral Order, the Postpetition Agent and Postpetition Lenders (in each case as defined in the Final Cash Collateral Order) agreed to provide the Debtors with Postpetition Loans on the terms set forth therein;

WHEREAS, pursuant to the Final Cash Collateral Order, the Debtors were authorized to use the Cash Collateral of the Master Trustee and the Postpetition Lenders;

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are Fairview Ministries, Inc. (2067), Fairview Village (2068), Fairview Baptist Home, d/b/a Fairview Center for Health & Wellness (9812), Fairview Residence of Rockford, d/b/a Crimson Pointe (8394), and VibrantLiving Communities & Services (1604).

WHEREAS, as of August 1, 2011, the Debtors will have sold substantially all of their assets;

WHEREAS, the Debtors have requested that the Postpetition Agent and Postpetition Lenders amend the Final Cash Collateral Order in order to extend the Maturity Date to August 1, 2011;

WHEREAS, the Debtors have also requested that, after the sale of substantially all of the Debtors' assets and the payment by the Debtors in full, in cash, of the Postpetition Loans, the Budget be supplemented to allow for the use of the Master Trustee's Cash Collateral in accordance with a revised budget, a copy of which is attached hereto as Exhibit A (the "Amended Cash Collateral Budget");

WHEREAS, the Debtors have requested that the Postpetition Agent, the Postpetition Lenders and the Master Trustee agree to increase the portion of the Carve-Out available for payment of the fees, costs and expenses accrued by the Debtors' professionals by an additional $125,000, and the Postpetition Agent, the Postpetition Lenders and the Master Trustee have so agreed;

WHEREAS, the Postpetition Agent, Postpetition Lenders and Master Trustee have agreed to allow the Debtors to use the first $150,000 of the proceeds of certain portions of their collateral collected by the Debtors after August 1, 2011 to (A) pay Debtors' professional fees, costs and expenses in the amount of up to $75,000, and (B) remit an amount of up to $75,000 to the chapter 7 trustee expected to be appointed in these cases for the chapter 7 trustee to make a

---

*(cont'd from previous page)*
[2] Capitalized terms used but not defined herein shall have the meanings given them in the Final Cash Collateral Order.

distribution to the holders of unsecured claims (other than the Master Trustee's (and other prepetition bondholders') deficiency claims and inter-company claims) [and other Debtors' and affiliates'];

WHEREAS, the Debtors and their professionals have agreed to perform all tasks necessary to facilitate the completion of the Chapter 11 Cases (including the diligent prosecution of a motion to convert the Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code as set forth herein);

WHEREAS, the Debtors and their professionals have agree to limit the amount of fees, costs and expenses paid to the Debtors' professionals to the amount of the increased Carve-Out (including as set forth in clause (A) of the preceding paragraph);

WHEREAS, the Postpetition Agent, Postpetition Lenders and Master Trustee are willing to amend the Final Order as set forth in this Agreed Order.

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED AS FOLLOWS:

1. Paragraph 32 of the Final Cash Collateral Order is amended and restated as follows:

"32. Except for the obligations with respect to Permitted Fee Expenses, all obligations and commitments of the Postpetition Agent and Postpetition Lenders hereunder shall expire at the earliest of the following (the "Maturity Date"): (i) August 1, 2011; (ii) the effective date of any plan of reorganization acceptable to the Postpetition Agent, Postpetition Lenders and the Master Trustee; or (iii) the closing date of a sale under section 363 of the Bankruptcy Code of substantially all of the Debtors' assets. After the Maturity Date, the Debtors shall be authorized to use Cash Collateral until the earlier of (x) September 30, 2011; or (y) the conversion of the Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code."

2. For the avoidance of doubt, the Debtors shall remit to the Master Trustee all Cash Collateral not otherwise used in accordance with the Amended Cash Collateral Budget without further order of this Court.

3. Subject to the payment in full in cash of the Postpetition Loans, the Carve-Out and the payment of all allowed amounts to the extent set forth in the Amended Cash Collateral Budget, the Prepetition Liens and Postpetition Liens shall attach to the remainder, if any, of the Escrowed Entrance Fees (subject to the rights of residents to obtain refunds of escrowed entrance fees in accordance with the terms of the Replacement Escrow Agreement), Escrowed Rockford Proceeds and the reserved proceeds of the Downers Grove Sale without further order of this Court. The Debtors are authorized and directed, whether before or after conversion of the case to one under Chapter 7 of the Bankruptcy Code, to distribute to the Master Trustee all remaining (i) Escrowed Entrance Fees and Escrowed Rockford Proceeds, immediately upon release from their respective escrows and (ii) reserved proceeds of the Downers Grove Sale immediately after payment of the allowed amounts set forth in the Amended Cash Collateral Budget, all without further order of this Court.

4. The Budget attached to the Final Cash Collateral Order as Exhibit B is amended and supplemented by the Amended Cash Collateral Budget found at Exhibit A hereto, and all of the Debtors' expenditures and use of Cash Collateral after August 1, 2011 must be in accordance with the Amended Cash Collateral Budget, as amended, and the Final Cash Collateral Order.

5. This Agreed Order shall be deemed effective as of July 29, 2011.

6. The Debtors' failure to file a motion on or before August 9, 2011 in form and substance reasonably satisfactory to the Agent and the Master Trustee seeking the conversion of the Debtors' Chapter 11 cases to cases under Chapter 7 of the Bankruptcy Code, to be heard by

the Court only after the allowance and payment of all administrative expense claims of the chapter 11 estate, including final fee applications of the Debtors' and the Committee's professionals, shall immediately terminate the Debtors' authorization to use Cash Collateral, without further notice to any party.

7. Except as expressly amended by this Agreed Order, the Final Cash Collateral Order remains unmodified and in full force and effect.

Dated: August 3, 2011
Chicago, IL

_____
United States Bankruptcy Judge

> The budgeted Carve-Out reserve for the payment of allowed Committee fees and expenses shall be preserved for the payment of such allowed fees and expenses.

**Exhibit A**
**Amended Cash Collateral Budget**

**FAIRVIEW MINISTRIES, INC ESTATE**
**Amended Cash Collateral Budget**
Updated: 8/1/2011

| DESCRIPTION | Week 1 W/E 8/5/2011 Projected | Week 2 W/E 8/12/2011 Projected | Week 3 W/E 8/19/2011 Projected | Week 4 W/E 8/26/2011 Projected | Week 5 W/E 9/2/2011 Projected | Week 6 W/E 9/9/2011 Projected | Week 7 W/E 9/16/2011 Projected | Week 8 W/E 9/23/2011 Projected | Week 9 W/E 9/30/2011 Projected | 9-Week Total |
|---|---|---|---|---|---|---|---|---|---|---|
| **A. Receipts** | | | | | | | | | | |
| CCIC Insurance Settlement | $ - | $ - | $ - | $ - | $ 55,000 | $ - | $ - | $ - | $ - | $ 55,000 |
| CEO Settlement Payment | - | - | 12,500 | - | - | - | - | - | - | 12,500 |
| Guide One Insurance Repayment | - | - | 4,514 | - | - | - | - | - | - | 4,514 |
| Life Insurance Proceeds (Bankers Trust) | - | - | - | 200,000 | - | - | - | - | - | 200,000 |
| HRA Proceeds | - | - | - | 84,500 | - | - | - | - | - | 84,500 |
| Skadden Retainer | - | - | - | - | - | - | - | 50,000 | - | 50,000 |
| Return of Gen. Liability Insurance Proceeds | - | - | - | - | - | - | 75,522 | - | - | 75,522 |
| Receipts from Downers Grove Escrow | - | - | - | - | - | - | 274,000 | 296,564 | - | 570,564 |
| Amounts sent to Operating Account at Closing | 281,845 | - | - | - | - | - | - | - | - | 281,845 |
| Receipts from Crimson Pointe Escrow Account | - | 1,109,442 | - | - | - | - | - | - | - | 1,109,442 |
| Carve outs (also held in DG Escrow Account): | | | | | | | | | | |
| Remaining from Initial Carve Out | - | - | - | - | - | - | 137,419 | - | - | 137,419 |
| Additional Carve Out for Debtor Professional Fees (1) | - | - | - | - | - | - | 125,000 | - | - | 125,000 |
| Private Pay Receivables (2) | 115,669 | 8,017 | 10,000 | - | - | - | - | - | - | 133,686 |
| Medicare Receivables (2) | 11,000 | 22,323 | - | 264,000 | 125,197 | 33,000 | 15,565 | 19,651 | - | 490,736 |
| Managed Care and Co-Insurance (2) | - | 16,000 | 5,000 | 30,435 | 40,000 | 11,200 | 12,177 | 16,923 | 5,000 | 136,735 |
| Subtotal - Cash Receipts | $ 408,515 | $ 1,155,782 | $ 32,014 | $ 578,935 | $ 220,197 | $ 44,200 | $ 639,683 | $ 383,138 | $ 5,000 | $ 3,467,463 |
| **B. Disbursements** | | | | | | | | | | |
| Mesirow Financial Interim Management (3) | - | - | - | - | - | - | 62,500 | - | - | 62,500 |
| Ungaretti & Harris (3) | - | 1,109,442 | - | - | - | - | 274,919 | - | - | 1,384,361 |
| Lender Professionals | - | - | - | - | - | - | - | - | - | - |
| Chapter 7 Trustee Fees | - | - | - | - | - | - | - | - | - | - |
| Reserve for UCC (Unused Carve Out) | - | - | - | - | - | - | 252,000 | - | - | 252,000 |
| Payroll (includes Vacation Pay Outs Due) | - | 162,416 | 12,209 | - | - | - | - | - | - | 174,626 |
| Employee Incentive Compensation | - | 99,600 | 7,619 | - | - | - | - | - | - | 107,219 |
| Other Administrative Claims and Expenses | - | - | - | - | - | - | - | 296,564 | - | 296,564 |
| Reserve for completion of tax work | - | - | - | - | - | - | 22,000 | - | - | 22,000 |
| AR Proceeds to Master Trustee | 425,556 | - | - | - | - | - | - | - | 761,157 | 761,157 |
| Payment to Master Trustee (4) | - | - | - | - | - | - | - | - | 413,043 | 838,599 |
| Subtotal - Cash Disbursements | $ 425,556 | $ 1,371,459 | $ 19,829 | $ - | $ - | $ - | $ 611,419 | $ 296,564 | $ 1,174,200 | $ 3,899,026 |
| Net Cash from Receipts and Disbursements | $ (17,041) | $ (215,677) | $ 12,185 | $ 578,935 | $ 220,197 | $ 44,200 | $ 28,264 | $ 86,574 | $ (1,169,200) | $ (431,563) |
| **C. Cash and Escrow Account Balances** | | | | | | | | | | |
| Beginning Bank Cash Balance | $ 506,563 | $ 489,522 | $ 273,845 | $ 286,030 | $ 864,965 | $ 1,085,162 | $ 1,129,362 | $ 1,157,626 | $ 1,244,200 | $ 506,563 |
| Plus: Net Cash Flow from Operations | (17,041) | (215,677) | 12,185 | 578,935 | 220,197 | 44,200 | 28,264 | 86,574 | (1,169,200) | (431,563) |
| Ending Bank Cash Balance | $ 489,522 | $ 273,845 | $ 286,030 | $ 864,965 | $ 1,085,162 | $ 1,129,362 | $ 1,157,626 | $ 1,244,200 | $ 75,000 | $ 75,000 |
| Downers Grove Escrow Balance | $ 882,983 | $ 882,983 | $ 882,983 | $ 882,983 | $ 882,983 | $ 882,983 | $ 346,564 | $ 50,000 | $ 50,000 | |
| Crimson Pointe Escrow Balance | $ 1,109,442 | - | - | - | - | - | - | - | - | |

**Notes:**
Sale of the Downers Grove sale closed August 1st and budget assumes all remaining land sales close by September 30th
Excess cash at end of period of $75,000 in BofA/Hinsdale bank accounts is for payment of general unsecured claims
Excess cash at end of period of $50,000 in Downers Grove escrow account is for payment of Chapter 7 Trustee fees
Excess cash at end of period in Crimson Pointe escrow account is paid directly to Master Trustee, which is estimated to be $0
(1) Mesirow Financial and Ungaretti and Harris to share equally in the additional carve out
(2) Amounts collected after 9/30/2011 are estimated to be approximately $120,000 (Approx $117K is collected in week ended 7/29 and reflected in the opening cash balance)
(3) Professional fees will also be paid separately from retainers; Amounts exclude retainers
(4) All remaining funds, cash on hand, remaining proceeds from miscellaneous asset sales to be sent to the Master Trustee, outside of the payments to general unsecured claimants and Chapter 7 trustee prior to Chapter 7 conversion