IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | Chapter 11 |
| | ) | |
| FAIRVIEW MINISTRIES, *et al.*,[1] | ) | Case No. 11-04386 (SPS) |
| | ) | Jointly Administered |
| Debtors. | ) | |
| | ) | Hearing Date: To Be Determined |
| | ) | Hearing Time: To Be Determined |

**SUMMARY OF FINAL APPLICATION OF
NEAL WOLF & ASSOCIATES, LLC FOR ALLOWANCE OF COMPENSATION
AND REIMBURSEMENT OF EXPENSES AS COUNSEL FOR
THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS**

| | |
|---|---|
| Name of Applicant: | Neal Wolf & Associates, LLC |
| Authorized to Provide Professional Services to: | Official Committee of Unsecured Creditors |
| Date of Order Authorizing Employment: | April 20, 2011 |
| Period for Which Compensation is sought: | March 16, 2011 through August 15, 2011 |
| Amount of compensation sought: | $ 167,382.50 |
| Amount of expense reimbursement sought: | $ 917.81 |
| Type of Fee Application: | Final Application |

Dated: August 22, 2011

By: /s/ Dean C. Gramlich
Neal L. Wolf (ARDC No. 6186361)
Gerald F. Munitz (ARDC No. 1990470)
Dean C. Gramlich (ARDC No. 6191587)
Jordan M. Litwin (ARDC No. 62877920)
NEAL WOLF & ASSOCIATES, LLC
Counsel to the Official Creditors'
Committee of Fairview Ministries, *et al.*
155 N. Wacker Drive, Suite 1910
Chicago, IL 60606
Main: (312) 228-4990
Fax: (312) 228-4988
Email: dgramlich@nealwolflaw.com

---

[1] The Debtors in these cases, along with the last four digits of each federal tax identification Debtor's number, are Fairview Ministries, Inc. (2067), Fairview Village (2068), Fairview Baptist Home, d/b/a Fairview Center for Health & Wellness (9812), Fairview Residence of Rockford, d/b/a Crimson Pointe (8394) and VibrantLiving Communications & Services (1604).

00001768.DOCX V-4

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE: ) | Chapter 11 |
| ) | |
| FAIRVIEW MINISTRIES, *et al.*,[1] ) | Case No. 11-04386 (SPS) |
| ) | Jointly Administered |
| Debtors. ) | |
| ) | **Hearing Date: To Be Determined** |
| ) | **Hearing Time: To Be Determined** |
| ) | |

**FINAL APPLICATION OF NEAL WOLF & ASSOCIATES, LLC
FOR ALLOWANCE OF COMPENSATION AND REIMBURSEMENT
OF EXPENSES AS COUNSEL FOR THE
<u>OFFICIAL COMMITTEE OF UNSECURED CREDITORS</u>**

Neal Wolf & Associates, LLC ("NW&A"), as counsel to the Official Committee of Unsecured Creditors (the "Committee") in the above-captioned cases (the "Cases"), hereby applies for final approval and allowance of fees in the amount of $167,382.50 and reimbursement of expenses in the amount of $917.81 for the period March 16, 2011 through and including August 15, 2011 ("Final Application Period"). NW&A further requests that the Court direct the Debtors to pay to NW&A fees and expenses approved hereunder in the amount of $69,972.50 and expenses in the amount of $575.35 for the period June 1, 2011 through August 15, 2011 ("Second Interim Period") in accordance with any order approving this final application ("Final Application") and the Final Order (1) Authorizing Debtors in Possession to Obtain Postpetition Financing; (2) Authorizing Use of Cash Collateral; (3) Providing Adequate Protection; and (4) Granting Liens, Security Interests and Superpriority

---

[1] The Debtors in these cases, along with the last four digits of each federal tax identification Debtor's number, are Fairview Ministries, Inc. (2067), Fairview Village (2068), Fairview Baptist Home, d/b/a Fairview Center for Health & Wellness (9812), Fairview Residence of Rockford, d/b/a Crimson Pointe (8394) and VibrantLiving Communications & Services (1604).

00001768.DOCX V-4                                1

Claims (Docket No. 156) (together with any prior interim orders, the "Cash Collateral/Financing Order").

## I. FACTUAL BACKGROUND

### A. General Case Status

1. On February 4, 2011 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code ("Bankruptcy Code") in the Bankruptcy Court for the Northern District of Illinois, Eastern Division (the "Court").

2. The Debtors remain in possession of their assets and continue to operate their businesses as debtors in possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

3. On March 4, 2011, the Office of the United States Trustee filed a pleading with the Court giving notice of the appointment of the following persons to serve on the Committee: David Bebb Jones, James Wear, Garland Stone, William S. Cumming, Adolf Belgram (by his representative Rosemary Janisch), Lois Kolar and Alliance Rehab, Inc. (by its representative Thomas L. Noesen, Jr.). *See* Docket No. 108. As the result of a settlement of its prepetition claims against the Debtors, Alliance Rehab subsequently resigned as a member of the Committee. *See* Docket No. 200. All of the current members of the Committee are residents in one of the facilities operated by the Debtors at the Downers Grove campus.

4. The Debtors have closed the sale of both the Rockford facility and the Downers Grove facilities.

5. To the best of NW&A's knowledge, the Debtors have paid or will pay all quarterly fees of the U.S. Trustee.

6. The source of the payment of the fees and expenses sought by NW&A is either the general revenues of Debtor Fairview Ministries, Inc. and/or funding made available to the Debtors under the Cash Collateral/Financing Order.

### B. Retention of NW&A

7. Shortly after the Petition Date, Neal L. Wolf, formerly a partner with Butler, Rubin Saltarelli & Boyd LLP, was retained to act as counsel to Adolf and Katherine Belgram, residents at the Debtors' Downers Grove campus.

8. Shortly after the appointment of the Committee members, the Committee chose Neal Wolf to act as their principal counsel in these Cases.

9. On May 16, 2011, Mr. Wolf started a new firm, NW&A, and the Committee chose to retain NW&A immediately upon its formation.

10. On April 20, 2011, the Court entered its Order Approving the Application of the Official Committee of Unsecured Creditors for the Employment and Retention of Neal Wolf & Associates, LLC as its Attorneys (Docket No. 239) ("Retention Order").

11. Subsequent to entry of the Retention Order, NW&A has acted as sole counsel (and indeed sole professional) to the Committee in connection with these Cases.

12. On July 13, 2011 the Court entered an Order Granting First Interim Application of Neal Wolf & Associates, LLC for Allowance of Compensation and Reimbursement of Expenses as Counsel for the Official Committee of Unsecured Creditors (Docket No. 324) ("Interim Fee App Order"), approving NW&A's first interim fee application ("Interim Fee Application") in full. This Final Application, in addition to seeking final allowance of the fees and expenses sought in the Interim Fee Application, seeks allowance and payment of fees and expenses incurred during the Second Interim

Period.

### C. Jurisdictional and Statutory Basis for this Final Application

13. The Court has jurisdiction over this core proceeding pursuant to 28 U.S.C. §§ 157(b)(2) and 1334. The venue of these Cases and this Final Application is proper in accordance with 28 U.S.C. §§ 1408 and 1409.

14. NW&A makes this Final Application pursuant to: (a) sections 330(a) and 331 of the Bankruptcy Code, (b) Rule 2016 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules"), (c) Rule 5082-1 of the Bankruptcy Rules of the United States District Court and the United States Bankruptcy Court for the Northern District of Illinois, effective as of June 1, 2003 and as amended ("Local Bankruptcy Rules") and (d) certain applicable provisions of the United States Trustee's Guidelines for Reviewing Applications for Compensation and Reimbursement Filed Under 11 U.S.C. § 330 (Appendix A to 28 C.F.R. § 58 ("Guidelines")).

## II. STATUS OF NW&A'S FEES AND EXPENSES, DISCOUNTS AND EXHIBITS

15. NW&A filed the Interim Fee Application on June 15, 2011. *See* Docket No. 289. On July 13, 2011, the Court entered the Interim Fee App Order. NW&A has received payment from the Debtors in the amount of $97,752.46.

16. NW&A has received no retainer in connection with its representation of the Committee in these Cases.

17. NW&A has agreed to certain discounts in the regular hourly rates of its attorneys in connection with its retention by the Committee. In addition, NW&A has agreed to not charge the Committee at all for any services rendered by legal assistant Rosemary Janisch. Ms. Janisch has acted as the representative of her father, Adolf Belgram, on the

Committee and also has acted as its co-chair with James Wear. In connection with her participation, Ms. Janisch has rendered considerable assistance to the Committee members, including, for example, delivering copies of important documents to them at their residences.

18. In connection with the compensation and expenses sought herein, neither NW&A nor its sole member, Neal L. Wolf, has received or been promised any compensation for services rendered or to be rendered in any capacity in connection with these Cases other than as set forth herein.

19. No agreement or understanding exists between NW&A and any third party for the sharing of compensation.

20. All of the services for which NW&A requests compensation were rendered solely at the request of the Committee and not on behalf of any other person or entity.

21. Between August 15, 2011 and September 27, 2011, the date currently schedule for a hearing on the Debtors' motion to convert these cases to chapter 11, NW&A will perform further services on behalf of the Committee, including holding a final Committee meeting. NW&A reserves the right to file a supplement to this Final Fee Application covering those services.

22. To assist the Court, the Debtors, the U.S. Trustee and the various parties in interest in analyzing NW&A's fees and expenses during the Final Application Period and as otherwise required, NW&A has attached the following exhibits:

    a. In accordance with Local Bankruptcy Rule 5082-1(B)(1)(e), **Exhibit A** hereto is a timekeeper summary showing the hourly rate of each attorney and legal assistant for whom compensation is requested, with the total number of hours expended and total

compensation requested for each such attorney and legal assistant during the Final Application Period.

b. In accordance with Local Bankruptcy Rule 5082-1(B)(1)(a), **Exhibit B** hereto is a summary list showing all activity categories into which NW&A organized its work and the total fees in each such category. **Exhibit B** again covers the entire Final Application Period.

c. In accordance with Local Bankruptcy Rule 5082-1(b)(1)(d), **Exhibit C** hereto is a summary showing each professional who performed work in a given activity category during the Final Application Period, the hours worked in each activity category by each such professional and the total compensation requested by that professional in each activity category.

d. In accordance with Local Bankruptcy Rule 5082-1(B)(1)(b) and (C), **Exhibit D** hereto is NW&A's invoice describing in detail each activity performed by a billing professional divided by activity category and showing (i) the date the work was performed; (ii) the name of the professional performing the work; (iii) a brief statement showing the nature of the work and (iv) the time expended on the work in tenth of an hour increments. **Exhibit D** covers only work performed during the Second Interim Period. NW&A's invoice for the period March 15, 2011 through May 31, 2011 is attached as Exhibit D to the First Interim Application and, in order to avoid burdening the Court's docket with repetitive filings, is incorporated herein by reference.

e. In accordance with Local Bankruptcy Rule 5082-1(B)(1)(g), **Exhibit E** hereto is a summary showing the total expenses for which reimbursement is sought broken down by expense category. **Exhibit E** covers expenses incurred by NW&A during the Final

Application Period. In addition to the foregoing exhibits, **Exhibit F** hereto is the Declaration of Dean C. Gramlich in support of the Final Application and **Exhibit G** hereto is a proposed form of order approving the Final Application.

### III. NARRATIVE STATEMENT

#### D. General Summary

23. NW&A hereby seeks final approval and allowance of compensation earned during the Final Application Period in the amount of $167,382.50 and allowance of expenses in the amount of $917.81. These total amounts include fees for both the First Interim Period and the Second Interim Period. Fees for the Second Interim Period amounted to $69,972.50 and expenses amounted to $575.35.

24. During the entire Final Application Period, NW&A generally advised the Committee with respect to a number of bankruptcy matters relating to the interests of unsecured creditors. By far the largest group of unsecured claims in these Cases consists of the contingent claims of residents for the refund of entrance fees paid at the time the residents entered into their particular residency agreements with Fairview Village, one of the Debtors. Hence, most of NW&A's work focused on preserving the right and interests of residents. However, the Committee, particularly during July, 2011, focused on obtaining funds to make a minimum distribution to trade creditors.

25. During the Final Application Period, the Committee consisted of residents housed in independent living facilities or, in one instance, in the long-term care facility. As more fully described in NW&A's First Interim Application, NW&A's primary work in this case involved meeting with and providing to the Committee written materials explaining the effect of the bankruptcy on the rights of residents and trade creditors and analyzing the sale of the Downers Grove campus pursuant to section 363(b) of the Bankruptcy Code, in

addition to certain critical negotiations with Debtor's counsel and other parties in interest.

26. NW&A also provided a variety of other legal services for the Committee as the Committee sought to protect the interest of unsecured creditors post-sale. Attorney Gramlich represented the Committee in negotiations over amendments to the terms of the Cash Collateral/Financing Order in August, 2011 and attended related hearings. Attorneys Gramlich and Wolf also participated in negotiations with counsel for the Debtors and the secured lenders regarding the post-sale resolution of the chapter 11 case, converting the case to chapter 7, the advisability of proposing a liquidating plan and other critical strategic considerations. Finally, NW&A represented the Committee at numerous significant hearings in the Cases, including hearings on the sale of the Downers Grove campus and on professional fee applications.

27. NW&A has staffed its representation at all times to avoid duplication of effort with the services provided by other professionals. The Committee did not retain a financial consultant, thus requiring NW&A to provide information and advice on financial and capital structure issues. NW&A has provided high quality services on a variety of legal and factual issues at rates which favorably compare with those of other law firms considered by the Committee.

E. **Detailed Summary**

28. In accordance with Local Bankruptcy Rule 5082-1(B)(1), the principal activity categories performed by NW&A on behalf of the Committee during the Final Application Period generally have been characterized according to the subject matter involved as required by the Guidelines. The same categories are used in the First Interim Period and the Second Interim Period. The specific amounts sought for each category in the First Interim Period are set forth in paragraph 27 of the Interim Fee Application. The

principal activities and specific amounts sought for the respective activities during the Second Interim Period are:

    a.    <u>General (Matter #001)</u>. NW&A seeks fees of $5,010.00 with respect to this activity category during the Second Interim Period.

    b.    <u>Financing (Matter #002)</u>. NW&A seeks fees of $135.00 with respect to this activity category during the Second Interim Period.

    c.    <u>Asset Sales (Matter #003)</u>. NW&A seeks fees of $16,735.00 with respect to this activity category during the Second Interim Period.

    d.    <u>Plan of Reorganization (Matter #004)</u>. NW&A did not perform any legal services in this activity category during the Second Interim Period.

    e.    <u>Communication with Creditors (Matter #005)</u>. NW&A seeks fees of $5,575.00 with respect to this activity category during the Second Interim Period.

    f.    <u>Committee Meetings (Matter #006)</u>. NW&A seeks fees of $18,205.00 with respect to this activity category during the Second Interim Period.

    g.    <u>Employment and Fee Matters (Matter #007)</u>. NW&A seeks fees of $16,670.00 with respect to this activity category. Compensation in this category made up approximately 24% of the compensation requested during the Second Interim Period.

    h.    <u>Post-Sale Closing Matters (Matter #8)</u>. NW&A seeks fees of $7,642.50 with respect to this activity category during the Second Interim Period.

29.    NW&A's activities during the First Interim Period are summarized in detail in in paragraph 28 of its First Interim Application. The following principal activities undertaken by NW&A during the Second Interim Period are, in accordance with Local Bankruptcy Rule 5082-1(B)(1), more particularly described as follows:

a. <u>General.</u> This project category pertains to the general administration of these Cases. During the Second Interim Period, NW&A attorneys reviewed relevant pleadings and generally monitored the docket. NW&A attorneys also reviewed the Debtors' proposed settlements with (i) Richard Olson, Fairview Ministries' President and CEO, and Kathleen Olson related to a shared equity agreement and (ii) Kathryn Andres (on behalf of the estate of Betty Andres) related to a personal injury lawsuit filed in the Circuit Court of Cook County. This activity category also includes the billings of NW&A associate Jordan Litwin in monitoring, on a regular basis, the docket in these Cases and advising more senior attorneys of significant new pleadings.

b. <u>Financing.</u> This activity category pertains to matters surrounding the Debtors' use of cash collateral and the postpetition financing provided by BAC and Bank of Hinsdale to the Debtors. Most of this work was done by Attorney Wolf during the First Interim Period (indeed, it was done prior to the opening of NW&A's offices). During the Final Application Period, Attorney Gramlich reviewed amendments made to the Cash Collateral/Financing Order and the revised budget. His efforts were focused on insuring that adequate funding existed to affect an orderly conversion process and insure a minimum cash dividend for trade creditors.

c. <u>Asset Sales.</u> Because the Debtors filed their Cases primarily to effect an expedited sale process subject to the deadlines in the Cash Collateral/Financing Order, a significant portion of NW&A's total fees fall into this category. Attorneys Wolf and Gramlich participated in negotiations relating to the final versions of APAs for Lifespace DG, analyses and discussions on the impact the sale would have on residency agreements and other contracts, and attention to the Debtors' proposed sale order. Attorney Gramlich

negotiated a side letter with Lifespace AG and the Debtors clarifying an ambiguity in the Lifespace AG APA relating to the rights of residents to entrance fee refunds. This category also includes time Attorney Gramlich spent attending hearings related to the sale of the Downers Grove facilities.

    d.    <u>Communications with Creditors.</u> NW&A attorneys have spent considerable time communicating with the Committee, particular residents not on the Committee and trade creditors regarding the status of the Cases, the prospects for recovery of prepetition claims, the sale process and documentation and the final resolution of the Cases. This included updates to the Committee as the Downers Grove sale process continued to closing. NW&A also had ongoing, regular communications with Committee co-chair Jim Wear regarding the sale process, upcoming Committee meetings and other issues of concern to the Committee during the Second Interim Period.

    e.    <u>Committee Meetings.</u> NW&A attorneys, particularly Attorneys Wolf and Gramlich, spent significant time attending meetings with the Committee at the Downers Grove facility to discuss the expedited sales process, continuing concerns over the status of the residents' rights (or the rights of their estates) to a refund of their entrance fee deposits, and other developments during the Second Interim Period. In-person meetings (greatly preferred by the Committee) occurred on June 8, July 14 and July 29, 2011. The Committee also held a telephonic meeting on June 15. At the Committee's request, the attorneys prepared the agendas for these meetings and also the minutes for each meeting based on their contemporaneous notes. Discussions at Committee meetings included the auction, assumption of residency agreements, the Downers Grove sale hearing and the general status of the Cases, including conversion to Chapter 7 and the possibility of a

liquidating plan.

  f. <u>Employment and Fee Matters.</u> NW&A prepared two fee applications during the Second Interim Period due to timing of the fee application process. Attorneys Gramlich and Litwin prepared the applications and declarations, and NW&A legal assistants assisted in the preparation of the relevant exhibits. Significant time was necessarily spent communicating with the Debtors and other parties, including noticing agent Garden City, as to the notice of the two fee applications and the timing of their filing and service. Attorney Gramlich also reviewed the interim fee applications filed by other professional to determine whether to recommend any action by the Committee and attended hearings on July 13, July 20 and August 10, 2011 regarding the first interim fee applications of professionals. Due to the complexities involved in the number of professionals involved in these Cases, a larger percentage of total time was spent on employment and fee matters during the Second Interim Period than might ordinarily occur. Approximately 15% of the total compensation sought by NW&A in these Cases relates to employment and fee matters.

  g. <u>Post-Sale Closing Matters</u>. While no NW&A attorneys charged time in this category in the First Interim Period, significant time was spent on post-sale closing matters during the Second Interim Period. During this period, the Debtors' closed the sale of the remainder of the Debtors' assets (namely the Downers Grove facilities and other miscellaneous assets). Attorneys Wolf and Gramlich engaged in extensive communications and negotiations with counsel for the Debtors and the secured lenders as to resolution of these Cases post-sale, post-conversion distributions to trade creditors, the settlement with Umpqua Bank of its claim against certain bank account balances, the setting of an administrative claims bar date and the negotiation and approval of certain post-sale

settlements.

## IV. DESCRIPTION OF EXPENSES INCURRED

30. NW&A seeks reimbursement of its actual and necessary expenses incurred in rendering services during the Final Application Period. The total amount of expenses for which reimbursement is sought is $917.81. **Exhibit E** hereto is a summary by type of all expenses incurred by NW&A during the Final Application Period.

31. NW&A incurred expenses in connection with conference calls to enable participation by traveling Committee members or attorneys unable to attend physically, mileage for trips to Downers Grove, a rental car for Mr. Gramlich to attend the June 8th Committee meeting, parking, copying, PACER charges and very limited LexisNexis research charges. NW&A charged minimal amounts for copying, long distance calls and faxes. There was no mark-up of the limited expenses for which NW&A seeks reimbursement.

## V. THE COMPENSATION AND EXPENSE REIMBURSEMENT SOUGHT BY NW&A ARE REASONABLE

32. To grant a request for compensation under sections 330 and 331 of the Bankruptcy Code, a bankruptcy court must find that such request is reasonable. As amended in 1994, Section 330 states:

> In determining the amount of reasonable compensation to be awarded to . . . [a] professional person, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including –
>
> (A)   the time spent on such services;
>
> (B)   the rates charged for such services;
>
> (C)   whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;

  (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issues, or task addressed;

  (E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and

  (F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

  Bankruptcy courts in this District normally engage in the so-called "lodestar approach." The lodestar approach is a two-step process involving the calculation of a lodestar figure (the time expended multiplied by hourly rate) and adjustment of this figure based on the factors referenced above. Based on the lodestar approach, NW&A is entitled to the compensation requested for the Final Application Period. NW&A provided necessary and important services to the Committee in connection with these complex and rapidly-moving Cases. In particular, NW&A attorneys working on the asset sales provided vitally important direction and experience in facilitating the timely sale of assets within the limited timeframe required by the Cash Collateral/Financing Order and in explaining the process to the Committee. NW&A also focused on the assumption of the Residency Agreements and the distribution to be made to trade creditors. The three senior attorneys at NW&A—Neal Wolf, Gerald Munitz and Dean Gramlich—have a combined 112 years of experience in bankruptcy practice and are well-regarded in the field. The rates charged by NW&A are reasonable and commensurate with or below that of the billing rates of other professionals in these Cases. As demonstrated above, NW&A's expenses were actual and necessary in light of the work required.

## VII. REQUEST TO APPROVE LIMTED NOTICE

  33. The Committee has provided copies of this Final Application, via the CM/ECF

system to (a) Ungaretti & Harris, principal bankruptcy and corporate counsel for the Debtors; (b) the Office of the United States Trustee; (c) Mintz Levin Cohn Ferris Glovsky & Popeo, PC, counsel to Wells Fargo Bank, National Association, in its capacity as Master Trustee under that certain Master Indenture dated as of January 1, 2008; (d) Winston & Strawn LLP, counsel to secured lender BAC; (e) Holland & Knight LLP, counsel to secured lender Hinsdale Bank & Trust Company; and (f) those persons who have formally appeared and requested service in these proceedings pursuant to Bankruptcy Rule 2002 (collectively, the "Notice Parties").

34. Additionally, Garden City, the Debtors' notice, claims and balloting agent, will in the near future serve on all creditors and parties in interest by first class mail a detailed notice of hearing on this Final Application that identifies the applicant, the amounts requested and the hours billed and provides detailed directions on requesting a hard copy and/or accessing an electronic copy via the free case management website maintained by Garden City Group.

35. NW&A requests that the Court excuse the notice requirement of Bankruptcy Rule 2002(a) (6) and approve the limited notice of the Final Application as sufficient and appropriate under the circumstances. Limited notice of the Final Application is sufficient in light of the expense to the Debtors' bankruptcy estate of individually serving approximately 3,600 creditors and parties in interest with the entire Final Application and the lack of an offsetting benefit given that the Notice Parties, including the United States Trustee the Debtors and the secured lenders, will receive copies of this Final Application and all exhibits. Further, the detailed notice of hearing provides all creditors with instructions on how to request a hard copy or retrieve an electronic copy of this Final Application free of charge.

## VIII. CONCLUSION

36. For the foregoing reasons, the fees requested in this Final

Application are reasonable and reflect the value of the services provided to the Committee and other creditors in accordance with section 1102(b)(3) of the Bankruptcy Code. Moreover, NW&A has requested reimbursement only of its actual and necessary expenses.

*[Remainder of Page Left Bank]*

WHEREFORE, NW&A respectfully requests that the Court enter an Order:

a. allowing on a final basis compensation of $167,382.50 for legal services rendered during Final Application Period;

b. allowing on a final basis reimbursement of expenses incurred during the Final Application Period in the amount of $917.81;

c. ordering the Debtors to pay to NW&A fees for the Second Interim Period in the amount of $69,972.50;

d. ordering the Debtors to pay to NW&A expenses for the Second Interim Period in the amount of $575.35; and

e. granting such other and further relief as the Court deems appropriate.

Dated: August 22, 2011

By: /s/ Dean C. Gramlich
Neal L. Wolf (ARDC No. 6186361)
Gerald F. Munitz (ARDC No. 1990470)
Dean C. Gramlich (ARDC No. 6191587)
Jordan M. Litwin (ARDC No. 62877920)
NEAL WOLF & ASSOCIATES, LLC
Counsel to the Official Committee of
Unsecured Creditors of Fairview Ministries, *et al.*
155 N. Wacker Drive, Suite 1910
Chicago, IL 60606
Main: (312) 228-4990
Fax: (312) 228-4988
Email: dgramlich@nealwolflaw.com