**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Lead Case No. 11-04386 |
| | ) | |
| FAIRVIEW MINISTRIES, INC., *et al.*,[2] | ) | (Jointly Administered) |
| | ) | Hon. Susan Pierson Sonderby |
| Debtors. | ) | Chapter 11 |
| | ) | |
| | ) | Hearing Date: September 27, 2011 |
| | ) | Hearing Time: 10:30 a.m. |

**COVER SHEET FOR SECOND AND FINAL APPLICATION FOR ALLOWANCE AND
PAYMENT OF COMPENSATION AND REIMBURSEMENT OF EXPENSES OF
<u>WOLF & COMPANY, LLP, DEBTORS' ACCOUNTANTS</u>**

**(Local Rule 5082-1(A))**

| | |
|---|---|
| Name of Applicant: | Wolf & Company LLP |
| Authorized to Provide Professional Services to: | Fairview Ministries, Inc., Fairview Village, Fairview Baptist Home, Fairview Residence of Rockford, and VibrantLiving Communities & Services, Debtors |
| Date of Order Authorizing Employment: | April 19, 2011, effective retroactively to February 4, 2011[Dkt. 238] |
| Period of Which Compensation is Sought: | June 1, 2011 through September 27, 2011 |
| Amount of Fees Sought: | $22,104.00 |
| Amount of Expenses Sought: | $ -0- |

This is a(n):    Interim Application: ____    Final Application:  X

---

[2] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are Fairview Ministries, Inc. (2067), Fairview Village (2068), Fairview Baptist Home, d/b/a Fairview Center for Health & Wellness (9812), Fairview Residence of Rockford, d/b/a Crimson Pointe (8394), and VibrantLiving Communities & Services (1604).

If this is not the first application filed herein by this professional, disclose as to all prior fee applications:

| Date Filed | Period Covered | Total Requested (Fees & Expenses) | Total Allowed (Fees & Expenses) | Fees & Expenses Previously Paid |
|---|---|---|---|---|
| 6/17/2011 | February 4, 2011 through May 31, 2011 | $50,000.000 | $50,000.000 | $50,000.000 |

Dated: August 22, 2011    Wolf & Company, LLP, Debtors' Accountants

By: /s/ Jonathan P. Friedland
One of their Attorneys

Jonathan P. Friedland
Levenfeld Pearlstein, LLC
2 N. LaSalle St., Suite 1300
Chicago, IL 60602
jfriedland@lplegal.com
Ph: 312-346-8380

3

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Lead Case No. 11-04386 |
| | ) | |
| FAIRVIEW MINISTRIES, INC., *et al.*,[3] | ) | (Jointly Administered) |
| | ) | Hon. Susan Pierson Sonderby |
| Debtors. | ) | Chapter 11 |
| | ) | |
| | ) | Hearing Date: September 27, 2011 |
| | ) | Hearing Time: 10:30 a.m. |

**SECOND AND FINAL APPLICATION FOR ALLOWANCE AND PAYMENT OF
COMPENSATION AND REIMBURSEMENT OF EXPENSES OF
WOLF & COMPANY, LLP DEBTORS' ACCOUNTANTS**

Wolf & Company LLP ("Wolf"), auditors and tax representative for the above-captioned Debtors and Debtors in Possession (the "Debtors"), pursuant to Sections 330 and 331 of title 11 of the United States Code (the "Bankruptcy Code"), Rule 2016(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Rule 5082-1 of the Bankruptcy Court for the Northern District of Illinois (the "Local Rules"), hereby requests the entry of an order allowing and disbursing compensation and reimbursement of expenses to Wolf (the "Second Application").

In its Second Application, Wolf requests: (a) the allowance and approval of Wolf's fees in the amount of $22,104.00 as reasonable compensation for hours of actual, necessary audit and tax services rendered to the Debtors between June 1, 2011 and September 27, 2011 (the "Second Application Period"); (b) the authorization and direction to the Debtors to pay to Wolf the sum of $22,104.00 (amount not yet paid); and (c) granting final approval and allowance of all fees and

---

[3] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are Fairview Ministries, Inc. (2067), Fairview Village (2068), Fairview Baptist Home, d/b/a Fairview Center for Health & Wellness (9812), Fairview Residence of Rockford, d/b/a Crimson Pointe (8394), and VibrantLiving Communities & Services (1604).

LP 2870278.2 \ 34082-60678

expenses previously awarded on an interim basis to Wolf & Company by prior order of the Court.  In support of its Second Application, Wolf states as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction over the matters raised in this Second Application pursuant to 28 U.S.C. §§ 157 and 1334.

2. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B), and (M).

3. Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

4. The statutory predicates for the relief requested herein are Sections 330 and 331 of the Bankruptcy Code, Bankruptcy Rule 2016(a), and Local Rule 5082-1.

## INTRODUCTION

5. On February 4, 2011 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the Bankruptcy Court for the Northern District of Illinois, Eastern Division (the "Court").

6. The Debtors remain in possession of their assets and continue to operate their businesses as debtors in possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

7. On March 4, 2011, the Office of the United States Trustee appointed an official committee of unsecured creditors (the "Creditors' Committee").

## BACKGROUND

8. The Debtors are Illinois not-for-profit corporations that currently own and operate a senior living facility in Illinois. VibrantLiving Communities & Services is the parent corporation of the Debtors and the sole corporate member of Fairview Ministries.

9. Fairview Ministries, Fairview Baptist Home, and Fairview Village currently operate the Downers Grove Campus in Downers Grove, Illinois and have been actively pursuing

efforts to sell that facility. Fairview Rockford formerly operated the Rockford Campus, an assisted living facility for senior adults in Rockford, Illinois known as "Crimson Pointe." On April 14, 2011, the Court entered an order authorizing the Debtors to sell Crimson Pointe and assume and assign certain executory contracts and unexpired leases [Dkt. 232]. On May 2, 2011, the sale of Crimson Pointe closed.

### The Debtors' Employment and Compensation To-Date of Wolf

10. On April 12, 2011, the Debtors filed an application to employ Wolf as its Accountants, [Dkt. 208]. The Debtors attached an Engagement Letter with Wolf to that application (the "Engagement Letter") [Dkt. 208-B].

11. As consideration for Wolf's services, the Debtors agreed to pay $50,000. *See* Dkt. 208.

12. On April 19, 2011, the Court entered an order authorizing the Debtors' employment of Wolf [Dkt. 238] (the "Employment Order") and excused Wolf from maintaining time records in connection with post-petition services rendered. *See* Employment Order at ¶3.

13. The Employment Order authorized Wolf to perform the following work: (i) update and complete the audit of the Debtors' financial statements for the year ended September 30, 2009 and (ii) audit the consolidated financial statements for the Debtors for the year ended September 30, 2010. Further, Wolf has agreed to (iii) prepare the Debtors' tax returns for the year ending 2010 and (iv) perform additional work as requested by the Debtors and accepted by Wolf including, without limitation, additional subsequent event audit procedures.

14. As consideration for those services, the Engagement Letter provided that Wolf would be compensated $50,000 as invoices were presented in respect of Wolf's delivery and the Debtors' acceptance of each component of work product. *See* Employment Order at ¶2.

1913380-3                                  3

15. Wolf has not entered into an agreement or understanding of any kind, expressed or implied, with any entity to share in its compensation received or to be received by Wolf for services rendered to the Debtors in these cases.

16. On June 17, 2011, Wolf submitted its First Interim Application for Compensation ("First Application") (Docket No. 303), in which it requested payment of $50,000.00.

17. Wolf's First Application was granted on July 13, 2011 (see Docket No. 329).

18. Copies of Wolf's invoices and supplemental engagement letter related to the Second Application Period are attached hereto as **Exhibit A**.

19. During the Second Application Period, Wolf provided a multitude of beneficial services to the Debtors including, the preparation of federal and state tax returns for periods ending subsequent to September 30, 2010; consultation regarding accounting and tax issues relative to the sale of assets by the Debtors; preparation of responses to various federal tax notices received from 2009 and 2010 tax years; and performance of agreed-upon procedures as required by the Illinois Nursing Home Care Act relative to the transfer of resident trust fund accounts.

## Post-Petition DIP Financing

20. On February 4, 2011, the Debtors filed their *Emergency Motion to Enter Interim and Final Orders: (1) Authorizing Debtors in Possession to Obtain Postpetition Financing; (2) Authorizing Use of Cash Collateral; (3) Providing Adequate Protection; (4) Granting Liens, Security Interests and Superpriority Claims; and (5) Scheduling a Final Hearing* [Dkt. 12] (the "DIP Motion") seeking authority, *inter alia*, to obtain post-petition financing on a senior secured, superpriority basis in an interim amount up to $6,100,000 and in a final amount up to $13,700,00

pursuant to a Senior Secured Superpriority Debtor-In-Possession Credit Agreement (the "DIP Loan Agreement").

21. On March 1, 2011, this Court entered its *Final Order (1) Authorizing Debtors in Possession to Obtain Postpetition Financing; (2) Authorizing Use of Cash Collateral; (3) Providing Adequate Protection; and (4) Granting Liens, Security Interests and Superpriority Claims* [Dkt. 156] (the "Final DIP Order").

22. As approved by the Final DIP Order, the DIP Loan Agreement provided for a Carve-Out for certain professional expenses (the "Carve-Out"). Wolf proposes that the Carve-Out be used to pay Wolf's allowed compensation and reimbursement during the Second Application Period, to the extent not previously paid.

## REQUEST FOR RELIEF

23. By this Application, Wolf seeks the entry of an order (a) allowing Wolf's fees in the amount of $22,104.00 as reasonable compensation for actual, necessary audit and tax services between June 1, 2011 and September 27, 2011, (b) authorizing and directing the Debtors to pay to Wolf & Company, LLP the sum of $22,104.00 (amount not yet paid); and (c) granting final approval and allowance of all fees and expenses previously awarded on an interim basis to Wolf & Company by prior order of the Court.

## BASIS FOR RELIEF REQUESTED

24. By the Employment Order, the Court has previously approved the form and manner of compensation to be paid to Wolf pursuant to Section 328, which permits the Court to authorize the employment of a professional person "on any reasonable terms and conditions" including fixed, percentage, and contingency fees. 11 U.S.C. § 328(a).

25. Wolf was excused from maintaining time records in connection with post-petition services rendered.

26. Wolf requests that the Court (A) review this Second Application under the reasonableness standard of Section 328(a), and (B) excuse the requirements of (i) Bankruptcy Rule 2016(a) to submit a detailed statement of services rendered, time expended and expenses incurred, and (ii) Local Rule 5082-1(B) and (C) to provide a narrative summary and a detailed statement of services divided by task and activity.

27. The compensation requested by Wolf is fair and reasonable. In support of the reasonableness of the compensation and reimbursement of expenses requested in this Application, Wolf states the following:

28. <u>Summary of Services Provided</u> – During the Second Application Period, Wolf provided a multitude of beneficial services to the Debtors including, the preparation of federal and state tax returns for periods ending subsequent to September 30, 2010; consultation regarding accounting and tax issues relative to the sale of assets by the Debtors; preparation of responses to various federal tax notices received from 2009 and 2010 tax years; and performance of agreed-upon procedures as required by the Illinois Nursing Home Care Act relative to the transfer of resident trust fund accounts.

29. <u>Wolf's Professionals</u> – Keith Friedlein, partner at Wolf, was responsible for the services provided during the Second Application Period.

30. <u>Fees</u> – Wolf's fees are less than or comparable to rates charged by other financial advisors having the same amount of experience, expertise, and standing for similar services in comparable Chapter 11 cases in the Northern District of Illinois.

31. <u>Second Application</u> – Wolf has not previously sought the allowance or payment of compensation.

32. <u>Payment of Compensation</u> – By this Application, Wolf seeks the entry of an order (a) allowing Wolf's fees in the amount of $22,104.00 as reasonable compensation for actual, necessary audit and tax services between June 1, 2011 and September 27, 2011; (b) authorizing and directing the Debtors to pay to Wolf & Company, LLP the sum of $22,104.00 (amount not yet paid); and (c) and (c) granting final approval and allowance of all fees and expenses previously awarded on an interim basis to Wolf & Company by prior order of the Court

## REQUEST TO APPROVE LIMITED NOTICE

33. Copies will be provided of this Second Application to (a) the Office of the United States Trustee; (b) the Debtors' secured creditors; (c) Neal Wolf & Associates, LLC, counsel to the Creditors' Committee; (d) Mintz Levin Cohn Ferris Glovsky and Popeo, PC, counsel to Wells Fargo Bank, National Association, in its capacity as Master Trustee under that certain Master Indenture dated as of January 1, 2008; (e) Winston & Strawn LLP, counsel to secured lender Bank of America, N.A.; (f) Holland & Knight LLP, counsel to secured lender Hinsdale Bank and Trust Company; (g) those persons who have formally appeared and requested service in these proceedings pursuant to Bankruptcy Rule 2002 (collectively, the "<u>Notice Parties</u>").

34. Additionally, Garden City Group, the Debtors' notice, claims, and balloting agent, has served on all creditors and parties in interest by first class mail a detailed notice of hearing on this Second Application that identifies the applicant and the amounts requested and provides instructions on requesting a hard copy and/or accessing an electronic copy via the free case management website maintained by Garden City Group.

35. Wolf & Company, LLP requests that the Court excuse the notice requirement of Bankruptcy Rule 2002(a)(6) and approve the limited notice of the Second Application as sufficient and appropriate under the circumstances. Limited notice of the Second Application is sufficient in light of the expense to the Debtors' bankruptcy estate of individually serving approximately 3,600 creditors and parties in interest with the entire Second Application (estimated cost: $15,000.00) and the lack of an offsetting benefit given that the Notice Parties, including the United States Trustee and the Creditors' Committee, will receive copies of this Second Application. Further, the detailed notice of hearing provides all creditors with instructions on how to request a hard copy or retrieve an electronic copy of this Second Application free of charge.

WHEREFORE, Wolf & Company LLP respectfully requests that this Court enter an order: (a) allowing Wolf's fees in the amount of $22,104.00 as reasonable compensation for actual, necessary audit and tax services between June 1, 2011 and September 27, 2011, (b) authorizing and directing the Debtors to pay to Wolf & Company, LLP the sum of $22,104.00 (amount not yet paid), and (c) granting final approval and allowance of all fees and expenses previously awarded on an interim basis to Wolf & Company by prior order of the Court.

Respectfully submitted,

Dated: August 22, 2011                       Wolf & Company, LLP, Debtors' Accountants

By: /s/ Jonathan P. Friedland
   One of their Attorneys

Jonathan P. Friedland
Levenfeld Pearlstein, LLC
2 N. LaSalle St., Suite 1300
Chicago, IL 60602
jfriedland@lplegal.com
Ph: 312-346-8380

1913380-3                             8

# EXHIBIT A

*VIBRANTLIVING COMMUNITIES & SERVICES*
*210 VILLAGE DRIVE*
*DOWNERS GROVE, IL 60516*

Invoice No. 93003
Date: Monday, July 11, 2011
Client No. 70652

**PLEASE RETURN A COPY OF THIS INVOICE WITH YOUR REMITTANCE**

Professional services rendered re:

Preparation of Forms 990-EZ for VibrantLiving Communities & Services for years ended September 30, 2009 and 2010 in response to notices received from Internal Revenue Service; correspondence with management and IRS regarding notices

| | | | |
|---|---|---|---|
| M. Eldersveld | 12.00 hours | $ | 2,280.00 |
| S. Nofzinger | .75 hours | | 214.00 |
| Administrative charges | | | 300.00 |

Correspondence with Internal Revenue Service regarding notice of late filing of 2009 Form 990 by Fairview Village

| | | |
|---|---|---|
| M. Eldersveld | 1.50 hours | 285.00 |

Correspondence with management regarding miscellaneous accounting and tax issues, including final accounting entries for Fairview Residence of Rockford upon sale of assets, tax impact to Ric Olson from forgiveness of debt related to Company's investment in property owned by Ric, and various other matters

| | | |
|---|---|---|
| K. Friedlein | 7.50 hours | 2,587.00 |
| T. Murtagh | 1.25 hours | 438.00 |

$ 6,104.00

NET 30 DAYS
Interest is charged on all balances over 30 days at an annual rate of 18%

*VIBRANTLIVING COMMUNITIES & SERVICES*
*210 VILLAGE DRIVE*
*DOWNERS GROVE, IL  60516*

*Invoice No. 92927*
*Date: Tuesday, July 05, 2011*
*Client No. 70652*

**PLEASE RETURN A COPY OF THIS INVOICE WITH YOUR REMITTANCE**

Professional services rendered re:

Advance billing for preparation of federal and state tax returns for the 2010 tax year for the following entities, per tax services engagement letter:

| | |
|---|---:|
| VibrantLiving Communities & Services | $ 1,000.00 |
| Fairview Ministries, Inc. | 3,500.00 |
| Fairview Baptist Home | 2,000.00 |
| Fairview Village | 2,500.00 |
| Fairview Residence of Rockford | 2,500.00 |
| Fairview Ministries NorthWest | 1,500.00 |
| Fairview Management & Development Services | 1,000.00 |
| | **$ 14,000.00** |

NET 30 DAYS
Interest is charged on all balances over 30 days at an annual rate of 18%

**Wolf & Company LLP**
*Certified Public Accountants*



A Wolf Financial Group Member

August 1, 2011

Mr. James Nugent
VibrantLiving Communities & Services
210 Village Drive
Downers Grove, Illinois 60516

Dear Jim:

We are pleased to confirm our understanding of the nature and limitations of the services we are to provide for VibrantLiving Communities & Services (the "Company").

We will perform the agreed-upon procedures listed in the attached schedule, solely to assist the Company in complying with the requirements of the Illinois Nursing Home Care Act relative to the transfer of resident trust fund accounts. Our engagement to apply agreed-upon procedures will be conducted in accordance with attestation standards established by the American Institute of Certified Public Accountants. The sufficiency of the procedures is solely the responsibility of the Company. Consequently, we make no representation regarding the sufficiency of the procedures listed in the attached schedule either for the purpose for which this report has been requested or for any other purpose. If, for any reason, we are unable to complete the procedures, we will describe any restrictions on the performance of the procedures in our report, or will not issue a report as a result of this engagement.

Because the agreed-upon procedures listed in the attached schedule do not constitute an audit, we will not express an opinion on the accounting records of the Company. In addition, we have no obligation to perform any procedures beyond those listed in the attached schedule.

We will submit a report listing the procedures performed and our findings. This report is intended solely for the use of the Company, and should not be used by anyone who did not agree to the procedures and take responsibility for the sufficiency of the procedures for their purposes. Our report will contain a paragraph indicating that had we performed additional procedures, other matters might have come to our attention that would have been reported to you.

Our fees for these services will be based on actual hours incurred, plus word processing and other out-of-pocket costs. We estimate that our fees will range from $1,500 to $2,000. This fee estimate is based on the assumption that unexpected circumstances will not be encountered during the engagement. If significant additional time is necessary, we will discuss it with you and arrive at a new fee estimate before we incur additional costs.


A PKF International Member Firm

1901 S. Meyers Road, Suite 500 · Oakbrook Terrace, Illinois 60181-5209
630.545.4500 *main* · 630.574.7818 *fax* · www.wolfcpa.com

Case 11-04386    Doc 401    Filed 08/22/11    Entered 08/22/11 15:03:35    Desc Main
            Document      Page 15 of 16

VibrantLiving Communities & Services
August 1, 2011
Page 2


We appreciate the opportunity to assist you and believe this letter accurately summarizes the significant terms of our engagement. If you have any questions, please let us know. If you agree with the terms of our engagement as described in this letter, please sign the enclosed copy and return it to us.

Very truly yours,

*Keith*

Keith A. Friedlein
Partner

KAFgl

RESPONSE:

This letter correctly sets forth the understanding of VibrantLiving Communities & Services.

Signature: *James E. Nugent*

Title: *Chief Implementation Officer*

Date: *8/5/2011*

## VIBRANTLIVING COMMUNITIES & SERVICES
## AGREED-UPON PROCEDURES

Wolf & Company LLP will perform the following procedures to assist VibrantLiving Communities & Services in complying with the requirements of the Illinois Nursing Home Care Act relative to the transfer of resident trust fund accounts:

- Obtain from management a schedule of resident account balances that comprise the Resident Trust Fund Account balance at July 31, 2011.

- Confirm the balance in the Resident Trust Fund Account at July 31, 2011 with the applicable financial institution.

- Reconcile any differences between the amount confirmed by the financial institution and the the Resident Trust Fund Account balance.

- Obtain from management a schedule of activity for each resident account that comprises the Resident Trust Fund Account balance at July 31, 2011.

- Review the activity for each resident account, as provided by management, and determine if transactions appear reasonable and proper.

- Verify the computation of interest credited to resident accounts for a sample of interest postings to each account.

