**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **In re:** | ) | **Chapter 11** |
| | ) | |
| **FAIRVIEW MINISTRIES, INC.,** *et al*, | ) | **Case No.  11-04386** |
| | ) | |
| | ) | |
| **Debtors.** | ) | **Jointly Administered** |
| | ) | |

**SECOND INTERIM AND FINAL FEE APPLICATION OF MESIROW FINANCIAL**
**INTERIM MANAGEMENT, LLC AS RESTRUCTURING MANAGERS**
**FOR THE PERIOD OF FEBRUARY 4, 2011 THROUGH SEPTEMBER 30, 2011[1] AND**
**JAMES E. NUGENT AS CHIEF IMPLEMENTATION OFFICER**
**FOR THE MONTHLY PERIODS OF FEBRUARY 2011 THROUGH SEPTEMBER 30, 2011**

Pursuant to §§328, 330, 331 and 363 of Title 11 of the United States Code (the "Bankruptcy

Code") and Rule 2016(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules")

and Local Rule 5082-1 of the Bankruptcy Court for the Northern District of Illinois (the "Local

Rules") and Orders of this Court, Mesirow Financial Interim Management, LLC ("MFIM")

respectfully files this Second Interim Application (the "Second Application") and final application

(together with the Second Application, the "Final Application") for allowance of compensation and

reimbursement of expenses as Restructuring Managers and for James E. Nugent as Chief

Implementation Officer ("CIO") in connection with the cases of Fairview Ministries, Inc., et al.,

debtors and debtors-in-possession herein (collectively, the "Debtors" or the "Company").

---

[1]  For the Second Application for the Application Period of June 13, 2011 through September 30, 2011 for Hourly Services and
for the time period August 2011 through September 2011 for CIO Services, MFIM has agreed to cap reimbursement of approved
professionals fees to $312,500.  For this Second Application for Hourly Services, the requested fees and time detail, at the timing
of this filing, is for the period through August 22, 2011 (the date of this filing).  MFIM Hourly Services will continue during the
time period of August 23, 2011 through September 30, 2011.  The expected MFIM Hourly Services time for this period is
estimated to be 96.0 hours and the related professional fees are expected to be $57,640. MFIM is requesting approval for the MFIM
Hourly Services fees incurred from August 23, 2011 through September 30, 2011.

This Second Application seeks allowance and approval of the compensation for hourly services rendered by MFIM professionals and actual and necessary expenses for MFIM and the CIO as described more fully herein for the period June 13, 2011 through September 30, 2011 and fixed monthly compensation for CIO services performed by the CIO for the monthly period of August 1, 2011 through September 30, 2011 (collectively, the "Application Period") and approval and compensation for hourly services rendered by MFIM professionals and actual and necessary expenses for MFIM and the CIO for the period February 4, 2011 through September 30, 2011 and fixed monthly compensation for CIO services performed by the CIO for the monthly periods of February 2011 through September 30, 2011 (the "Final Application Period").

By this Second Application, MFIM seeks allowance of fees in the amount of $257,653.00 as compensation for 470.8 hours of services rendered by professionals providing hourly services and serving the Debtors as Restructuring Managers, $260,000.00 as compensation for CIO services rendered by James E. Nugent, the Chief Implementation Officer and $1,286.66 for reimbursement for actual and necessary expenses for a total of $518,939.66 for the Application Period.  Attached as Exhibit A to this Second Application is a fee application summary as required by the Executive Office of the U.S. Trustee's Guidelines (the "Guidelines") dated March 22, 1995, as amended January 30, 1996.     In addition, by this Final Application, MFIM seeks allowance of fees in the amount of $1,120,801.00 as compensation for 2,014.4 hours of services rendered by professionals providing hourly services and serving the Debtors as Restructuring Managers, $1,040,000.00 as compensation for CIO services rendered by James E. Nugent, the Chief Implementation Officer and $3,860.58 for reimbursement for actual and necessary expenses for a total of $2,164,661.58 for the Final Application Period.  Attached as Exhibit G to this Final Application is the fee application summary as required by the Guidelines.

In support of this Second Interim and Final Application, MFIM states the following:

JURISDICTION AND VENUE

1.     This Court has jurisdiction over the matters raised in this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A).

2.     Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

3.     The statutory predicates for the relief requested in this Motion are Section 363 of the Bankruptcy Code and Rule 6004 of the Bankruptcy Rules.

INTRODUCTION

4.     On February 4, 2011 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the Bankruptcy Court for the Northern District of Illinois, Eastern Division (the "Court").

5.     The Debtors remain in possession of their assets and continue to operate their businesses as debtors-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

6.     No trustee or examiner has been appointed in these cases.

BACKGROUND

7.     The Debtors are each Illinois not-for-profit corporations. VibrantLiving Communities & Services ("VibrantLiving") is the sole corporate member of Fairview Ministries, Inc. ("Fairview Ministries"). Fairview Ministries is the sole corporate member of Fairview Baptist Home, Fairview Village and Fairview Residences of Rockford.  Fairview Ministries, Fairview Baptist Home, and Fairview Village are engaged in the operation of a continuing care retirement community ("CCRC") in Downers Grove, Illinois, which is known as "Fairview Village" (the "Downers Grove Campus"). Fairview Residence of Rockford operates an assisted living facility serving senior adults in Rockford (the "Rockford Campus").

8.     This Motion is further supported by the Declaration of James E. Nugent in Support of the Debtors' First Day Motions [Dkt. 15], which provides an overview of the Debtors' corporate

structure and business operations and the circumstances leading to the commencement of these chapter 11 cases.

9.      On February 17, 2011 (Docket #74), the Debtors filed an application (the "Employment Application") for authorization to employ MFIM as their Restructuring Managers and to designate James E. Nugent as Chief Implementation Officer retroactive to February 4, 2011, inclusive of the affidavit of James E. Nugent (the "Affidavit") and MFIM engagement letter ("MFIM Engagement Letter") in support of the Employment Application.  On March 15, 2011 (Docket #154), this Court entered an Order pursuant to Section 363 of the Bankruptcy Code authorizing the retention and employment of MFIM as Restructuring Managers and to designate James E. Nugent as Chief Implementation Officer retroactive to February 4, 2011 (the "Employment Order").   The Employment Application, Affidavit, MFIM Engagement Letter and Employment Order state the terms and conditions of MFIM's employment inclusive of CIO services and are incorporated herein by reference.

10.     The Debtors needed assistance in the (a) management of their operations including management and oversight of resident services, marketing of resident services and contracts, financial operations and services, facilities and maintenance of facilities, administration, human resources and all other residential facility operations, (b) the oversight of the process and negotiations related to development of a plan for and implementation of Section 363 asset sale transactions and collection and disposition of other estate assets, (c) oversight of the process and negotiations related to development of a plan for and implementation of winding down the remaining assets of the Debtors post-sale, (d) management of negotiations and communications with lenders, creditors and all other stakeholders, (e) retaining and managing of other professionals for the Debtors to implement the Debtors' plans, and (f) the collection and analysis of financial and other information in connection with these chapter 11 cases. To fill that need, the Debtors selected and employed MFIM to serve as their Restructuring Managers and Mr. Nugent as their CIO because of MFIM's and Mr.

Nugent's considerable, diverse experience and extensive knowledge of CCRCs, asset transactions, bankruptcy and restructuring cases, and expertise in the provision of interim management services and financial services for financially distressed and troubled companies, both inside and outside of bankruptcy proceedings.  MFIM is a wholly-owned subsidiary of Mesirow Financial Holdings, Inc., a diversified financial services firm which also offers financial consulting, investment management, insurance services, investment banking and real estate services.

11.    The Debtors have employed MFIM since September 7, 2010, when they first appointed Mr. Nugent as the Debtors' CIO to manage and operate the business, evaluate strategic alternatives, conduct negotiations and communicate with lenders, and provide other aforementioned services including restructure and/or sell the assets of VibrantLiving. By virtue of that engagement, MFIM is familiar with the operations of the Debtors, as well as the books, records, financial information, and other data maintained by the Debtors. Further, MFIM has worked closely with the Debtors' Board of Directors, management, the Debtor in Possession ("DIP") loan lenders, Letter of Credit Banks, Bondholders' representatives, Official Committee of Unsecured Creditors, residents and other stakeholders, employees, and other advisors and have acquired relevant experience and expertise in that regard.  As such, MFIM is qualified to provide interim management, restructuring and other advisory services to the Debtors. Further, the Debtors' retention and employment of MFIM was a benefit to the Debtors, their estates, and creditors and other parties in interest, because MFIM's significant knowledge and relevant experience provides the most efficient and cost-effective manner in which the Debtors may obtain the services they require.

12.    The Chief Implementation Officer has held many roles and responsibilities to date, including, but not limited to overseeing all aspects of the business of the Company including the finance department, human resources, operations and the work of the Executive Directors, who directly manage resident services, care and related matters and report to the CIO.  In addition, the duties of the CIO have included, but are not limited to the following:

- Providing strategic advice and financial advisory services and support in preparing for a Chapter 11 bankruptcy filing, including advising on sale strategies and asset disposition alternatives, bid procedures and asset purchase agreements;

- Managing the Debtors progression in these Chapter 11 cases in conjunction with the Debtors' counsel and stakeholders in these cases;

- Leading negotiations regarding asset sale transactions for both Crimson Pointe and Fairview Campus in Downers Grove, Illinois, including negotiating the asset purchase agreements with the respective buyers, and advising on and assisting with preparation of schedules supporting the transaction agreements;

- Managing the transition and closing for the Crimson Pointe campus and preparing for the auction, transition and closing of the Fairview campus sale;

- Attending and participating in Board of Director and Committee meetings to advise the Company's Board regarding the CIO's responsibilities, including the status of the operations, the status of the two campus asset sales, winding down of the non-Obligated Group assets, which includes Fairview Northwest, Fred Lind Manor and other real estate holdings and the sale of the property located in Downers Grove, and providing recommendations and advice to the Board in various matters;

- Advising on the preparation of and updates to the Company's cash flow forecast and financial projections, as well as the required debtor-in-possession weekly reporting package;

- Directing, advising and assisting the retained investment bankers in the marketing of the Crimson Pointe and Fairview campuses including many meetings with the stalking horse bidders and many prospective buyers;

- Assisting Company management and its retained communications firm with the development of a communication strategy and plan with residents, employees, vendors and other stakeholders related to a chapter 11 bankruptcy filing and transaction plans;

- Providing assistance in the preparation of and review of reports or filings as required by the Bankruptcy Court or the Office of the United States Trustee, including, but not limited to, schedules of assets and liabilities, statements of financial affairs and monthly operating reports;

- Securing and negotiating the debtor-in-possession loan to fund these cases and pay resident refunds including evaluating alternative debtor-in-possession financing arrangements;

- Preparing and advising on the preparation of information, schedules and analyses needed to support various negotiations with lenders and creditors and first day motions and pleadings;

- Analyzing and assisting in the preparation and review of the Company's financial statements and information, including, but not limited to, analyses of cash receipts and

disbursements and other financial analyses and information needed to support proposed transactions and motions for which Bankruptcy Court approval is sought;

- Analyzing assumption and rejection issues regarding executory contracts and leases including assembly of executory contracts and lease schedules;

- Meeting with the Creditors' Committee and their legal counsel to discuss case issues and provide updates;

- Managing the transition and closing for the Fairview campus and coordinating such transition items with the buyer;

- Providing advice and assistance to the Debtors in negotiations and meetings with the Creditors' Committee, the lenders and other parties-in-interest; and

- Advising on and leading the Company in negotiations and meetings with the bondholders and letter of credit banks, master trustee for bond indebtedness, other lenders, creditors and other parties-in-interest including their legal and financial advisors related to asset sales transactions and these chapter 11 bankruptcy cases.

13.     This is MFIM's second interim and final application for allowance of compensation and reimbursement of expenses in these cases.

## FEES AND EXPENSES INCURRED DURING THE SECOND APPLICATION PERIOD

14.     Pursuant to §§330 and 331 of Title 11 of the United States Code and Rule 2016(a) of the Bankruptcy Rules, all professionals retained in these cases are authorized to seek compensation for professional services rendered and reimbursement of expenses incurred.  Upon authorization of this Court, the Debtors will pay the professional fees requested and expenses incurred during the Application Period.

15.     Attached as Exhibit A hereto are the names, positions, hourly rates and a summary of hours charged for the professionals retained as Restructuring Managers whose hourly services are being billed in connection with these cases during the Application Period.  Attached as Exhibit B hereto is a summary schedule of the monthly fee charged for the Chief Implementation Officer's services for the Debtors for these cases.  Attached as Exhibit C hereto is a summary schedule of hours and fees charged for MFIM hourly services for each category of services.

16.     Attached as Exhibit D hereto are the detailed daily descriptions of services rendered

by each professional retained as Restructuring Managers performing hourly services including

financial advisory services during the Application Period, including the hours incurred with respect

to each task and the resultant fees.   Pursuant to Rule 5082-1 of the Local Rules of Bankruptcy

Practice and Procedure of the United States Bankruptcy Court for the Northern District of Illinois

(the "Local Rules"), MFIM certifies that this Second Application complies with the requirements of

Local Rule 5082-1 regarding these descriptions and in all other material respects.   These descriptions

are separated into the following matters for services provided during the Application Period:

## CATEGORY

### *Bankruptcy and Claims Administration and Claims Resolution*

MFIM assisted the Debtors in reconciling the originally scheduled claims to the actual prepetition
claims in the Debtors' financial statements and records. MFIM assisted the Debtors in preparing an
amended Schedule F of unsecured claims and coordinating efforts for noticing and filing with the
Garden City Group. MFIM's efforts in this regard benefited the Debtors by assisting in providing
information relating to the Debtors' operations and financial affairs to interested parties in the cases
and compiled the information in a timely and efficient manner.  The information was utilized by the
Debtors to negotiate with the pre-petition and DIP lenders to provide for a recovery to the unsecured
claimants. Further, this category includes time incurred by MFIM working with the finance staff in
confirming payments made to specific vendors, reviewing individual invoices, and researching
claims made by specific vendors, either through contact with the Debtors' bankruptcy attorneys or
through filing a motion with the Court. MFIM reviewed administrative claims schedules and filed
proof of claims.  MFIM also discussed a claims reconciliation process with the Debtors and Ungaretti
and Harris.  MFIM incurred a total of **30.3** hours during the period **June 13, 2011** through **August
22, 2011** with regard to this activity.

### *Cash Flow Forecasting/Weekly DIP Loan Reporting Package*

MFIM assisted Debtors' management in updating a rolling weekly DIP loan budget which was
approved by the DIP Loan Lenders, Letter of Credit Banks and Master Trustee for bond
indebtedness. In addition, MFIM analyzed cash on a daily and weekly basis, as well as assisted
Debtors in preparing accounts receivable, accounts payable and bank account reconciliations on a
weekly basis as part of the ongoing weekly reporting package requirements. MFIM assisted the
Debtors in updating estimated receipts as well as estimated DIP loan usage and timing for resident
refund payments and operating disbursements. MFIM prepared a post-sale cash collateral budget
under the direction of the CIO, discussed the budget with the Lenders and Master Trustee
representative, as well as Debtors and Ungaretti and Harris. MFIM also prepared the weekly variance
analysis and met with finance staff weekly to analyze the weekly budget to actual performance by
receipt and expense category. MFIM monitored weekly compliance of the DIP loan terms for
disbursements and cash threshold levels (as per the DIP and to comply with bond counsel guidance
for tax exemption requirements) and coordinated with the Debtors to receive current resident refund

data as well as any anticipated changes to timing of receipts and disbursements based on discussion with various department heads. In addition, we received guidance from the CIO related to various cash flow reporting issues and accordingly, analyzed cash flows and data to provide information requests from the CIO and the lenders, including the cash impact of various case wind down scenarios and estimated cash flows through September 30th. MFIM assisted in the preparation and communication of the post-sale (post DIP loan) cash collateral budget.  MFIM incurred a total of **100.7** hours during the period **June 13, 2011** through **August 22, 2011** with regard to this activity.

### *Court Hearings*

MFIM prepared the CIO and Ungaretti and Harris for various court hearings, including the Fairview sale hearing, cash collateral budget hearing, and other hearings on various Debtors' motions including sale of various assets. MFIM attended the Fairview sale hearing as well as preparation session with the attorneys, CIO, and Debtors' management to the extent necessary. It was essential for the CIO to attend these hearings, and for MFIM to assist in preparation of these hearings, given the CIO's offers of proof provided as to his testimony in connection with many motions, including the Fairview Downers Grove campus sale motion.  MFIM time for hearing preparation services are included in the appropriate time categories (Cash Flow Forecasting/Weekly DIP Loan Reporting Package for the Post-Fairview Sale Cash Collateral Budget and in Fairview Asset Sale/Sale Process for the sale transaction).  For actual attendance at the Fairview Sale hearing to support the CIO and counsel, MFIM incurred a total of **1.0** hour during the period **June 13, 2011** through **August 22, 2011** with regard to this activity.

### *Creditor Issues and Information Requests*

MFIM assisted the Chief Implementation Officer in preparing for the weekly lender calls with representatives of the post-petition DIP lenders, the Letter of Credit Banks and the Master Trustee for bond indebtedness and their respective retained professionals. MFIM assisted the Debtors in responding to various information requests of the prepetition bondholders and letter of credit banks and their retained professionals as well as the DIP Lenders, including requests for information regarding the sale and disposition of assets under the post-sale wind down period, as well as the anticipated costs and cash impact to the Debtors.  MFIM assisted the CIO in preparation for and at meetings (conference calls) with either the Official Committee of Unsecured Creditors ("UCC") or the UCC's counsel.  MFIM incurred a total of **23.7** hours during the period **June 13, 2011** through **August 22, 2011** with regard to this activity.

### *Fairview Asset Sale/Sale Process*

In connection with this activity, the CIO, MFIM and Debtor management discussed various bidder qualifications for potential additional bids with RBC Capital Markets (the Debtors' investment banker for the Downers Grove campus). In addition to this, MFIM coordinated with Ungaretti and Harris on drafting a potential Transition Services Agreement between the Debtors and the buyer which was utilized by the CIO and the Debtors to reach resolution with Lifespace DG, LLC on transition services post-sale of the Fairview campus. MFIM assisted the CIO in discussing transition matters with Debtor management, including reviewing billing and other procedures affected by the transition to a new buyer. MFIM also facilitated information requests of the buyer. MFIM also assisted Ungaretti and Harris in preparing for the closing of the sale transaction by coordinating with the Debtors in updating the APA schedules, reviewing and updating the closing statements/flow of

funds memo and closing checklists, and updating a sources and uses of sale proceeds at closing. MFIM incurred a total of **39.3** hours during the period **June 13, 2011** through **August 22, 2011** with regard to this activity.


*Fee Applications and Fee Statements*

MFIM finalized the detailed First Interim Fee Application as required, in order to comply with the Bankruptcy Code, Bankruptcy Rules and US Trustee Guidelines and incorporated suggested edits made by the Debtors attorney. MFIM also prepared and updated the Second and Final Fee Application. MFIM analyzed and reconciled among professionals monthly time detail and expenses incurred beginning on June 13, 2011 through August 22, 2011, a schedule summarizing the CIO's monthly service fees through September 2011, and summarized these in the particular format in order to comply with the Bankruptcy Code, the Bankruptcy Rules, and the United States Trustee Guidelines for professionals in these cases. MFIM incurred a total of **65.3** hours during the period **June 13, 2011** through **August 22, 2011** with regard to this activity.


*Financial and Company Analysis*

MFIM assisted in the review and analysis of the Debtors' financial statements and other accounting and financial records including but not limited to accounts receivable and accounts payable records, monthly financial statements, cash position reports and activity, projected capital expenditures, and other financial records. MFIM assisted Debtors' management with the preparation of analyses and review of monthly operating performance. MFIM assisted in the preparation of monthly operating reports ("MOR") including analyzing accounting, tax and other matters, engaging in correspondence with the office of the U.S. Trustee, and preparing and formatting and compiling schedules. MFIM analyzed actual financial performance including revenues, expenses, receipts and disbursements and reviewed variances by receipt and expense category with the Debtors for the MOR and financial statement reporting. In addition, MFIM engaged in correspondence and discussions with the Debtors regarding vendor communications, marketing initiatives and updates, cash management, insurance policy status due to the sale, personnel and employee matters, and other operational issues. MFIM coordinated with the Debtors' insurance brokers in terminating the necessary insurance policies as a result of the sale and implementing new policies required for remaining assets in the Debtors' estates. MFIM also participated in a weekly meeting with Retirement Dynamics, the marketing manager, and Debtors' management, to discuss various marketing initiatives, progress and strategies which assisted to support ongoing sale of resident contracts, escrowing funds and providing updates to the lenders and UCC. MFIM analyzed and reviewed pre and post petition accounts payables, potential 503(b)(9) claims, and estimated cure amounts for contracts related the Downers Grove campus. MFIM worked with the Debtors in forecasting fees to pay in advance to the U.S. Trustee, as well as other costs of the estate. MFIM also engaged in correspondence and discussions with Ungaretti and Harris regarding various financial and operational issues including, but not limited to, cure amounts, and resident related issues. MFIM assisted the CIO in managing various financial and operational aspects of the Debtors' business and wind down of the Estates. MFIM met several times with the finance staff to analyze and review accounts receivable and allowances for doubtful accounts. MFIM assisted the CIO in preparation for Board meetings and meetings with representative of the Lenders and Master Trustee. MFIM also assisted the Debtors in analyzing and advising on proposed sale transactions for Fairview owned properties, as well as settlement agreements for the LifeBio and CCIC investments as well as other settlement arrangement with the Chief Executive Officer, allowing Debtors' management to remain focused on its core business and financial matters and

processes. Finally, MFIM participated in discussions and attended meetings with the Board of Directors. MFIM incurred a total of **160.8** hours during the period **June 13, 2011** through **August 22, 2011** with regard to this activity.

*Utility Motion Tracking*

In connection with this activity, MFIM reviewed utility vendor invoices and accounts payable records, estimated pre-payments and true-up payments, and engaged in correspondence with Debtors to authorize the payments. MFIM engaged in numerous discussions and correspondence with various utility vendors regarding monthly prepayment and true-up amounts, and other issues or concerns. MFIM also updated utility vendor tracking schedules regarding discussions with vendors, payments made and scheduled, and key follow-up items for the Debtors. MFIM coordinated with the buyer in discussing utility vendor related transition issues, including the handling of credits and remaining balances. MFIM incurred a total of **49.7** hours during the period **June 13, 2011** through **August 22, 2011** with regard to Utility Motion Tracking.

**Total Hours and Requested Fees for Professionals Retained as Restructuring Managers:**

**470.8 hours**        **$257,653.00**

17.      The above descriptions for each category of services are also applicable for services provided during the Final Application Period.  For the Final Application for the Final Application Period, the categories and descriptions of services for the Second Application herein, and those used in the approved First Fee Application, incorporated herein by reference, are the services performed and are incorporated in their entirety for the Final Application Period.

18.      While detail has been provided for MFIM Hourly Services provided as of August 22, 2011, it is anticipated that the Debtors will require assistance from the Restructuring Managers from August 23, 2011 through the Chapter 7 conversion date, estimated to be no later than September 30, 2011, for the following items: (i) following up with various parties for the collection of the miscellaneous asset proceeds, including life insurance proceeds, CCIC settlement proceeds, amounts due from Health Resource Alliance, net of service credits and various insurance premium and utility provider refunds due to the Estate, (ii) ongoing monitoring and required reporting to the Master Trustee and Lenders for weekly cash collateral budget activity and compliance, (iii) assisting the CIO with tracking accounts receivable receipts and billing/collection activities, as well as coordinating

with the new owner for transition services, (iv) required ongoing monthly reporting to the U.S.

Bankruptcy Court through the date of conversion to a Chapter 7 case, (v) tracking Estate claim

payments and reporting to the Chapter 7 Trustee, and (vi) providing ongoing support to the CIO and

Ungaretti and Harris for various court motions and hearings, as well as to support any creditor

requests for information. It is estimated that for the period of August 23, 2011 through September 30,

2011, MFIM's Restructuring Managers will incur approximately 96.0 hours of service for fees

totaling an estimated $57,640. [1]

19.     Attached as Exhibit E is a summary of actual and necessary expenses incurred during

the Application Period.  Exhibit F a detailed schedule of the actual and necessary expenses incurred

during the Application Period.

20.     Per the Employment Application, MFIM Engagement Letter and Employment Order,

the Chief Implementation Officer is to be compensated $130,000 per month for his services, to be

billed and collected in advance of the month in which service is to be incurred. As such, for the

Application Period, the CIO has incurred $260,000 in fees and as of the fee application hearing has

performed and will perform services and has billed the Debtors for services through September 30,

2011 at a fixed fee amount of $130,000 for the month, for a total amount requested to be approved of

$260,000.  The CIO services provided during this Application have been focused on the closing of

the Fairview sale, negotiation, settlement, disposition and collection of substantial assets for the

benefit of the Estates, overseeing reporting to the Court, U.S. Trustee and lenders, noticing of

residents with escrowed entrance fees and deposits, administering claims and payments to creditors,

employees, and administrative claimants, and reporting and filing of tax returns as well as other

matters as further described in paragraph 26 of this Second and Final Application.

---

[1] For the time period August 23, 2011 through Chapter 7 conversion date, anticipated to be September 30, 2011, it is estimated that K. Thomas and A. Reinke will incur 44.0 hours and 52.0 hours, respectively.

**Total Requested Fees for Professional Retained as Chief Implementation Officer and Related CIO Services:**

**$260,000.00**

21.     MFIM incurred $1,286.66 in expenses during the Application Period.

22.     MFIM has not provided, and will not provide, any professional services to any of the creditors of the Debtors, other parties-in-interest, or their respective attorneys and accountants with regard to any matter related to these Chapter 11 cases.

23.     During the Application Period, MFIM has received no payment and no promises for payment from any source for services rendered or to be rendered in any capacity whatsoever in connection with the matters covered in this Application.  There is no agreement or understanding between MFIM and any party or person other than members of the firm for the sharing of compensation to be received for services rendered in these cases.

24.     Prior to the Petition Date, MFIM was paid an advance retainer in the sum of $250,000.00 (the "Advance Retainer").  MFIM intends to hold the unapplied Advance Retainer and only apply such Advance Retainer to its final compensation and expense reimbursement allowed by the Court.

25.     MFIM performed the above professional services and other necessary activities associated with the provision of our assistance during the Application Period at the request and direction of the Board of Directors of the Debtors, CIO, and its counsel.  Applicant submits that the professional services rendered as CIO and Restructuring Managers to the Board of Directors of the Debtors and for the benefit of these estates have been valuable, necessary and appropriate and have not been duplicative of services performed by other professionals retained in these cases.  Applicant believes the compensation sought is fair and reasonable for the professional services provided in light of the effective and efficient matter in which the Applicant has addressed and implemented solutions to the issues in managing the operations and resident services and care of the Debtors, the magnitude,

complexity and nature of the Company's operations, and the issues, the transactions and proceedings related to these cases.

26.     MFIM and the CIO have diligently represented the Debtors during this Application Period.  The duties of the CIO during this Application Period, through and including September 30, 2011, include: (1) Developing plans to (i) sell and/or liquidate all remaining assets of the Estates including land parcels located in Washington State, land parcels located in Downers Grove, life insurance cash surrender value proceeds and other miscellaneous accounts, and negotiating settlement of investment in CCIC, (ii) analyzing and evaluating administrative claims, (iii) determining investment in CCIC, requirements of and preparing reporting to the Bankruptcy Court, U.S Trustee, Lenders, Creditors, regulators and the Center for Medicare and Medicaid ("CMS") and federal and state taxing authorities, (iv) providing notice to residents and depositors regarding applicable entrance fees and deposits maintained under an escrow agreement to preserve their rights and providing for transfer of escrow funds to the Master Trustee for bond indebtedness after exercise of the residents rights; (v) oversight and management of billing for Fairview services provided in July 2011 and collection and follow-up for all outstanding accounts receivable; and (vi) determining reporting requirements of and preparing for transition to a Chapter 7 Trustee, which includes providing a schedule of unpaid debts as of the conversion date, filing necessary reports and accounts, and remitting funds for payment of general unsecured claims, to ensure a smooth transition for the Estates.

27.     MFIM and the CIO have successfully managed the business matters and business operations including resident services, care and other related resident matters and has successfully negotiated the sale of the Debtors' assets for the benefit of the Debtors' estates and its residents and creditors inclusive of the wind down of the estates during this Application Period. The CIO, with the assistance of MFIM and other Debtors' professionals, has successfully implemented the closing of the sale transaction for the Downers Grove Campus and has managed the process to transition the

Downers Grove Campus to the new owner. The CIO and MFIM professionals have successfully negotiated, sold, liquidated and closed transactions for the remaining assets of the Debtors for the benefit of the Estates and for the creditors including assisting with motions and hearings before this Court. MFIM has managed other Debtor professionals related to these cases and the sale process for the Debtors' assets in an effective and efficient manner, overall increasing the value of these estates. Based upon the circumstances, the fair value of the professional services rendered by MFIM and the CIO, the skill required, the nature of services rendered, and the results obtained, the total fees requested and charged by MFIM and the CIO for its services in these cases are reasonable.

28.     In addition to the Lender provided "Carve-out" payment for the Court approved fees and expenses for the First Application Period plus Advance Retainer to cover payment for services provided during this Application Period, the Lenders have increased the "Carve Out" payment provided for the CIO and MFIM services by $62,500. The Lenders and MFIM have agreed to provide for and have agreed to cap fees to be paid to MFIM for CIO and MFIM services and fees approved by this Court for this Second Application at $62,500 plus the Advance Retainer of $250,000, for a total of $312,500.

<u>REQUEST TO APPROVE LIMITED NOTICE</u>

29.     Copies of this Second Interim and Final Application to (a) the Office of the United States Trustee; (b) the Debtors' secured creditors; (c) Neal Wolf & Associates, LLC, counsel to the Creditors' Committee; (d) Mintz Levin Cohn Ferris Glovsky and Popeo, PC, counsel to Wells Fargo Bank, National Association, in its capacity as Master Trustee under that certain Master Indenture dated as of January 1, 2008; (e) Winston & Strawn LLP, counsel to secured lender Bank of America, N.A.; (f) Holland & Knight LLP, counsel to secured lender Hinsdale Bank and Trust Company; (g) the Debtors; and (h) those persons who have formally appeared and requested service in these proceedings pursuant to Bankruptcy Rule 2002 (collectively, the "<u>Notice Parties</u>").

30.     Additionally, Garden City Group, the Debtors' notice, claims, and balloting agent,

has served on all creditors and parties in interest by first class mail a detailed notice of hearing on this

Second Interim and Final Application that identifies the applicant and the amounts requested and

provides instructions on requesting a hard copy and/or accessing an electronic copy via the free case

management website maintained by Garden City Group.

31.     MFIM requests that the Court excuse the notice requirement of Bankruptcy Rule

2002(a)(6) and approve the limited notice of the Application as sufficient and appropriate under the

circumstances.  Limited notice of the Application is sufficient in light of the expense to the Debtors'

bankruptcy estate of individually serving approximately 3,600 creditors and parties in interest with

the entire Second Interim and Final Application (estimated cost: $79,000) and the lack of an

offsetting benefit given that the Notice Parties, including the United States Trustee and the Creditors'

Committee, will receive copies of this Second Interim and Final Application.  Further, the detailed

notice of hearing provides all creditors with instructions on how to request a hard copy or retrieve an

electronic copy of this Second Interim and Final Application free of charge.

<u>FEES AND EXPENSES INCURRED DURING THE FINAL APPLICATION PERIOD</u>

32.     Pursuant to §§330 and 331 of Title 11 of the United States Code and Rule 2016(a) of

the Bankruptcy Rules, MFIM hereby submits this Final Application for the final approval and

allowance of compensation of fees and reimbursement of expenses for services rendered during the

Final Application Period.  MFIM respectfully requests a final award and payment of this Final

Application for fees and expenses incurred during the Final Application Period as shown below:

| Date Filed | February 4, 2011 through September 30, 2011 | Fees | Expenses |
|---|---|---|---|
| June 16, 2011 | February 4, 2011 through June 12, 2011 | $1,643,148.00 | $2,573.92 |
| This Second Interim and Final Application | June 13, 2011 through September 30, 2011 | $517,653.00 | $1,286.66 |
| | **Final Application Fees and Expenses Total** | $2,160,801.00 | $3,860.58 |

33.     Attached as Exhibit G hereto are the names, positions, hourly rates, and a summary of hours charged for the professionals whose services were billed in connection with these cases for the Final Application Period.  Attached as Exhibit H hereto is a summary schedule of hours charged and fees incurred by professional for each interim application period during the Final Application Period. Attached as Exhibit I hereto is a summary schedule of hours charged and fees incurred by category of services for each interim period during the Final Application Period.  Attached as Exhibit J hereto is a summary schedule of actual and necessary expenses incurred for each interim application period during the Final Application Period.

34.     MFIM has received interim payment of $1,645,721.92 to date as allowed and approved by the Court.  To date, MFIM is paid in full for the First Application Period.

35.     For the Final Application inclusive of the approved First Application, MFIM is requesting allowance and approval by the Court of $1,120,801.00 for hourly services performed by MFIM restructuring professionals and $1,040,000.00 for the described CIO services performed by the CIO for total requested professional fees of $2,160,801.00.  MFIM has agreed to cap the payment for the approved professional fees for the Final Application at $1,958,221.92 ($1,645,721.92 for the First Application Period and $312,500 for the Second Application).

36.     MFIM expended a total of 2,014.4 hours during the Final Application Period for the hourly services provided at an average blended hourly rate of approximately $556.  MFIM made every effort to keep the time expended to the lowest amount practicable and to have the work performed by the least expensive professional capable of performing the tasks.

37.     Applicant submits that the professional services rendered as CIO and Restructuring Managers to the Board of Directors of the Debtors and for the benefit of these estates have been valuable, necessary and appropriate and have not been duplicative of services performed by other professionals retained in these cases.  Applicant believes the compensation sought is fair and reasonable for the professional services provided in light of the effective and efficient matter in

which the Applicant has addressed and implemented solutions to the issues in managing the operations and resident services and care of the Debtors, the magnitude, complexity and nature of the Company's operations, and the issues, the transactions and proceedings related to these cases.

38.     All professional services and expenses for which an allowance is requested were performed or incurred by MFIM and the CIO for and on behalf of the Debtors and for the benefit of the Debtors' estates and not on behalf of any other entity or party-in-interest.  The fees and expenses sought by MFIM for the CIO services and the hourly services, except to the extent prohibited by the Guidelines, are billed at a monthly fixed amount for the CIO services and at standard hourly rates in accordance with practices customarily employed by MFIM and generally accepted by MFIM's clients.  As identified in the Employment Application, Affidavit and MFIM Employment Letter authorized by the Employment Order, MFIM increased the hourly rates for hourly services effective April 1, 2011 in accordance with customary practices employed by MFIM and accepted by MFIM's clients.

39.     MFIM and the CIO have diligently represented the Debtors during this Final Application Period.  MFIM and the CIO has successfully managed the business matters and business operations including resident services, care and other related resident matters and has successfully negotiated the sale of the Debtors' assets and have administered and managed the wind down of the estates for the benefit of the Debtors' estates and its residents and creditors. MFIM has managed other Debtor professionals related to these cases and the sale process for the Debtors' assets in an effective and efficient manner, overall increasing the value of these estates.  Based upon the circumstances, the fair value of the professional services rendered by MFIM and the CIO, the skill required, the nature of services rendered, and the results obtained, the total fees requested and charged by MFIM and the CIO for its services in these cases are reasonable.

40.     The CIO, with support of MFIM and Debtors' counsel, negotiated with pre-petition secured Lenders and the DIP Lenders to allow for the set aside and allowance of $75,000 to be

provided for pre-petition unsecured creditors to establish a "floor" of recovery for the pre-petition

unsecured creditors (excluding deficiency claims by the Master Trustee on behalf of the bondholders

and by the bondholders and any deficiency claim by mortgage debt holders as more fully described

in the filed conversion motion to a Chapter 7 proceeding for these cases and excluding resident

contingent claims). Due to Court approved payment of resident contract payments due during these

cases and the negotiations for full assumption of resident contracts and the related resident contingent

claims by Lifespace DG LLC, resident claims have achieved a full recovery.

41.     During the Final Application Period, MFIM has received no payment and no

promises for payment from any source for services rendered or to be rendered in any capacity

whatsoever in connection with the matters covered in this Final Application.  There is no agreement

or understanding between MFIM and any party or person other than members of the firm for the

sharing of compensation to be received for services rendered in these cases.

WHEREFORE, MFIM respectfully requests that the Court (i) authorize approval and allowance in the amount of $517,653.00 as compensation for services rendered by the CIO and MFIM professionals and $1,286.66 for reimbursement of actual and necessary expenses incurred during the Application Period, for a total of $518,939.66; (ii) authorize approval and allowance in the amount of $2,160,801.00 as compensation for services rendered by the CIO and MFIM professionals and $3,860.58 for reimbursement of actual and necessary expenses incurred during the Final Application Period, for a total of $2,164,661.58;   (iii) authorize compensation and payment of the outstanding amount due of $312,500.00 and (iv) grant such other and further relief as the Court may deem proper. Further, MFIM requests approval of the Hourly Service Fees for the period August 23, 2011 through the conversion date, to be no later than September 30, 2011, in the amount of $57,640.

Dated:  August 22, 2011

Respectfully submitted:

*James E. Nugent*

_____

James E. Nugent
Senior Managing Director
Mesirow Financial Interim Management, LLC
353 N. Clark Street
Chicago, Illinois 60654
312/595-6000
312/644-8927 Fax

Prepared with assistance of and filed by:

/s/ George R. Mesires

Donald L. Schwartz (# 2522861)
George R. Mesires (# 6276952)
Patrick F. Ross (# 6296461)
Ungaretti & Harris LLP
70 W. Madison Street, Suite 3500
Chicago, IL 60602
(312) 977-4400 – phone
(312) 977-4405 – fax
Email:  dlschwartz@uhlaw.com
          grmesires@uhlaw.com
          pfross@uhlaw.com
*Counsel for the Debtors and Debtors in Possession*