IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Lead Case No. 11-04386 |
| | ) | |
| FAIRVIEW MINISTRIES, INC., *et al.*,[1] | ) | (Jointly Administered) |
| | ) | Hon. Susan Pierson Sonderby |
| Debtors. | ) | Chapter 11 |
| | ) | |
| | ) | Hearing Date:  September 27, 2011 |
| | ) | Hearing Time: 10:30 a.m. |

**SECOND AND FINAL APPLICATION FOR ALLOWANCE AND PAYMENT
OF COMPENSATION AND REIMBURSEMENT OF EXPENSES OF
<u>UNGARETTI & HARRIS LLP, DEBTORS' COUNSEL</u>**

Ungaretti & Harris LLP ("U&H"), counsel for the above-captioned Debtors and Debtors

in Possession (the "Debtors"), pursuant to Section 330 of title 11 of the United States Code (the

"Bankruptcy Code"), Rule 2016(a) of the Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rules"), and Local Rule 5082-1 of the Bankruptcy Court for the Northern District

of Illinois (the "Local Rules"), hereby requests the entry of an order awarding compensation and

reimbursement of expenses of U&H on a final basis (the "Final Application").

As described more fully below, on June 16, 2011, U&H filed its *First Interim Application*

*for Allowance and Payment of Compensation and Reimbursement of Expenses* [Dkt. 290] (the

"First Application") seeking an interim award of compensation totaling $1,093,851.00 and

reimbursement of expenses totaling $15,591.36 for legal services rendered for the Debtors

between February 1, 2011 and May 15, 2011 (the "First Application Period"). The Court has

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification
number, are Fairview Ministries, Inc. (2067), Fairview Village (2068), Fairview Baptist Home, d/b/a
Fairview Center for Health & Wellness (9812), Fairview Residence of Rockford, d/b/a Crimson Pointe
(8394), and VibrantLiving Communities & Services (1604).

scheduled a continued hearing to consider the First Application concurrently with the Final

Application on Tuesday, September 27, 2011 at 10:30 a.m.

By this Final Application, U&H requests:

(a) the allowance and approval of U&H's attorney's fees in the amount of $502,922.50 as reasonable compensation for 1,149.60 hours of actual, necessary legal services rendered to the Debtors between May 16, 2011 and September 30, 2011 (the "Second Application Period"), which includes additional time from the First Application Period inadvertently not previously included in the First Application, plus an additional $80,000 of estimated fees for an estimated 165 hours of services to be rendered between August 22, 2011 and September 30, 2011;

(b) the allowance and approval of U&H's out of pocket costs in the amount of $2,355.13 as actual, necessary expenses recorded during the Second Application Period, which includes additional expenses from the First Application Period inadvertently not previously included in the First Application;

(c) the award to U&H, on a final basis, of $1,596,773.50, plus an additional $80,000 of estimated fees for services to be rendered between August 22, 2011 and September 30, 2011, as reasonable compensation for actual, necessary legal services rendered to the Debtors and $3,731.18 as reimbursement for actual, necessary expenses incurred on behalf of the Debtors between February 1, 2011 and September 30, 2011 (the "Total Application Period"); and

(d) the authorization and direction to the Debtors to pay – subject to any applicable limitations contained in the *Agreed Order Amending Final Order (1) Authorizing Debtor in Possession to Obtain Postpetition Financing; (2) Authorizing Use of Cash Collateral; (3) Providing Adequate Protection; and (4) Granting Liens, Security Interests and Superpriority Claims* [Dkt. 384] and the related Budget, as described more fully below – to U&H the sum of $1,600,504.68, plus an additional $80,000 of estimated fees for an estimated 165 hours of services to be rendered between August 22, 2011 and September 30, 2011.

As set forth more fully below, U&H reserves its right to file with the Court a supplement

to the Final Application detailing the actual fees and expenses incurred after the date of this

filing and attaching additional Billing Statements (as that capitalized term is defined below). In

further support of its Final Application, U&H states as follows:

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over the matters raised in this Final Application

pursuant to 28 U.S.C. §§ 157 and 1334.

2.      This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B), and (M).

3.      Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The statutory predicates for the relief requested herein are Section 330 of the

Bankruptcy Code, Bankruptcy Rule 2016(a), and Local Rule 5082-1.

## INTRODUCTION

5.      On February 4, 2011 (the "Petition Date"), the Debtors filed voluntary petitions

for relief under chapter 11 of the Bankruptcy Code in the Bankruptcy Court for the Northern

District of Illinois, Eastern Division (the "Court").

6.      The Debtors remain in possession of their assets and continue to operate their

businesses as debtors in possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

7.      On March 4, 2011, the Office of the United States Trustee appointed an official

committee of unsecured creditors (the "Creditors' Committee").

## BACKGROUND

8.      The Debtors are Illinois not-for-profit corporations that previously owned and

operated two senior living campuses. VibrantLiving Communities & Services is the parent

corporation of the Debtors and the sole corporate member of Fairview Ministries.

9.      Fairview Ministries, Fairview Baptist Home, and Fairview Village previously

operated the Downers Grove Campus in Downers Grove, Illinois.

10.     On June 21, 2011, the Bankruptcy Court authorized the Debtors to sell the

Downers Grove campus and assume and assign certain executory contracts and unexpired leases

to Lifespace DG, LLC, an affiliate of Lifespace Communities, Inc., an owner and operator of 12
senior living facilities (including the Downers Grove Campus). On August 1, 2011, the sale of
the Downers Grove Campus closed.

11.     Fairview Residence of Rockford formerly operated the Rockford Campus, an
assisted living facility for senior adults in Rockford, Illinois known as "Crimson Pointe." On
April 14, 2011, the Court entered an order authorizing the Debtors to sell Crimson Pointe and
assume and assign certain executory contracts and unexpired leases [Dkt. 232]. On May 2, 2011,
the sale of Crimson Pointe closed.

**The Debtors' Employment of U&H**

12.     On February 17, 2011, the Debtors filed their *Application to Employ George R.
Mesires and Ungaretti & Harris LLP as Bankruptcy Counsel* [Dkt. 73] (the "Employment
Application"). As stated in the Employment Application, the Debtors have employed U&H to
provide general legal services in these bankruptcy cases. *See* Employment Application ¶ 12(a)-
(g). The Debtors agreed to compensate U&H on an hourly basis that reflects a discount of
approximately 10% from U&H's standard restructuring rates, which discount has been in effect
since October 1, 2010. *Id.* at ¶ 15. U&H agreed to bill all legal services in increments of 1/10th of
an hour. *Id.* ¶ 16.

13.     On or about November 12, 2010, the Debtors transferred $250,000 to U&H as an
advance payment retainer (the "Advance Payment Retainer") for services to be rendered by
U&H. The Advance Payment Retainer was subsequently applied and replenished on a regular
basis until shortly prior to the Petition Date. Currently, the amount of the Advance Payment
Retainer is $204,891.38. By this Final Application, U&H seeks an order allowing U&H to apply

the remainder of the Advance Payment Retainer to compensation and reimbursement of expenses incurred in connection with services rendered to the Debtors during the Total Application Period.

14. On March 10, 2011, the Court entered its *Order Authorizing Debtors to Employ George R. Mesires and Ungaretti & Harris LLP as Bankruptcy Counsel* [Dkt. 137] (the "Employment Order"), which authorized the Debtors to employ U&H effective retroactively to the Petition Date.

## Post-Petition DIP Financing

15. On February 4, 2011, the Debtors filed their *Emergency Motion to Enter Interim and Final Orders: (1) Authorizing Debtors in Possession to Obtain Postpetition Financing; (2) Authorizing Use of Cash Collateral; (3) Providing Adequate Protection; (4) Granting Liens, Security Interests and Superpriority Claims; and (5) Scheduling a Final Hearing* [Dkt. 12] (the "DIP Motion") seeking authority, *inter alia*, to obtain post-petition financing on a senior secured, superpriority basis in an interim amount up to $6,100,000 and in a final amount up to $13,700,00 pursuant to a Senior Secured Superpriority Debtor-In-Possession Credit Agreement (the "DIP Loan Agreement").

16. On March 1, 2011, this Court entered its *Final Order (1) Authorizing Debtors in Possession to Obtain Postpetition Financing; (2) Authorizing Use of Cash Collateral; (3) Providing Adequate Protection; and (4) Granting Liens, Security Interests and Superpriority Claims* [Dkt. 156] (the "Final DIP Order").

17. Pursuant to the Final DIP Order, the Debtors' authorization to use Cash Collateral was set to expire on July 29, 2011. *See* [Dkt. 156] ¶ 32.

18. At a hearing before the Court on July 26, 2011, counsel for Wells Fargo Bank, National Association, Bank of America, N.A., and Hinsdale Bank and Trust Company confirmed

on the record that those entities agreed not to exercise any rights under the Final DIP Order until

at least August 1, 2011, the anticipated closing date of the sale of the Downers Grove Campus.

*See* July 26, 2011 Tr. at 11:12-25.

### Agreed Order Amending Final DIP Order

19.     On August 1, 2011, the Debtors filed their *Emergency Motion for Entry of Order
Amending Final Order (1) Authorizing Debtor in Possession to Obtain Postpetition Financing;
(2) Authorizing Use of Cash Collateral; (3) Providing Adequate Protection; and (4) Granting
Liens, Security Interests and Superpriority Claims* [Dkt. 366] (the "Cash Collateral Motion")

seeking to modify the Final DIP Order for the limited purpose of extending the period within

which the Debtors are authorized to use Cash Collateral through the earlier of the conversion of

these chapter 11 cases to cases under chapter 7 of the Bankruptcy Code or September 30, 2011.

20.     On August 2, 2011, the Court entered its *Agreed Order Amending Final Order (1)
Authorizing Debtor in Possession to Obtain Postpetition Financing; (2) Authorizing Use of Cash
Collateral; (3) Providing Adequate Protection; and (4) Granting Liens, Security Interests and
Superpriority Claims* [Dkt. 384] (the "Cash Collateral Order") authorizing the Debtors to use

Cash Collateral pursuant to an Amended Cash Collateral Budget attached to the Cash Collateral

Order as Exhibit A (the "Budget") through the earlier of the conversion of these chapter 11 cases

to cases under chapter 7 of the Bankruptcy Code or September 30, 2011.

21.     Pursuant to the Budget, a total of $1,384,361 has been set aside as part of the

Carve Out for use in the Debtors' payment – in addition to the Advance Payment Retainer – of

U&H's fees. *See* [Dkt. 366] at 7.

## U&H's First Application

22.     On June 16, 2011, U&H filed its *First Interim Application for Allowance and Payment of Compensation and Reimbursement of Expenses* [Dkt. 290] (the "First Application") seeking an interim award of compensation totaling $1,093,851.00 and reimbursement of expenses totaling $15,591.36 for legal services rendered for the Debtors between February 1, 2011 and May 15, 2011 (the "First Application Period").

23.     On July 13, 2011, U&H presented the First Application to the Court, and the matter has been continued from time to time without entry of an order. The next scheduled status hearing on the First Application is scheduled for September 27, 2011 at 10:30 a.m.

24.     Of the professionals employed in these cases, U&H, whose fiscal year ends on September 30, 2011, is the only one that has not received any interim award of compensation or reimbursement of expenses since the commencement of these cases in early February 2011.

25.     As stated in the Cash Collateral Order, the Debtors, the Creditors' Committee, and the Agent and the Master Trustee (as those capitalized terms are defined therein) have agreed to seek conversion of the Debtors' chapter 11 cases to cases under chapter 7 of the Bankruptcy Code only after the Court allows and pays all administrative expense claims of the chapter 11 estate, including final fee applications of the Debtors' and the Committee's professionals. *See* [Dkt. 384] at ¶ 6.

## The Debtors' Motion to Convert Cases to Chapter 7

26.     On August 9, 2011, the Debtors filed their *Motion to Convert Cases Under Chapter 11 to Cases Under Chapter 7* [Dkt. 386] (the "Conversion Motion") seeking entry of an order converting the Debtors' chapter 11 cases to cases under chapter 7 of the Bankruptcy Code.

27.     The Conversion Motion is currently scheduled for presentment to the Court on

September 27, 2011 at 10:00 a.m. If granted, the Debtors' chapter 11 cases would be converted

to cases under chapter 7 on September 30, 2011.

## LEGAL SERVICES PERFORMED BY U&H

28.     Itemized and detailed descriptions of the specific legal services rendered and out

of pocket expenses incurred by U&H during the Second Application Period[2] are reflected on the

monthly billing statements for May 16-31, 2011 (**Exhibit A**), June 2011 (**Exhibit B**), July 2011

(**Exhibit C**), and August 1-21, 2011 (**Exhibit D**) (each a "Billing Statement" and, collectively,

the "Billing Statements") attached to this Final Application and incorporated by reference.

29.     Additionally, a chart is attached as **Exhibit E**, which summarizes the Monthly

Billing Statements (a) for the Second Application Period, and (b) for the Total Application

Period.  This chart also shows the amount of discount provided by U&H to the Debtors under the

"U&H Client Not-For-Profit Discount," which is described more fully below in Par. No. 53.

30.     During the Total Application Period, U&H's discount to the Debtors has totaled

$178,580.50.

31.     As required by Local Rule 5082-1(B) and (C), U&H provides the following

Narrative Summary and Detailed Statement of Services for the Second Application Period

which, when combined with the descriptions contained in the First Application, reflect required

descriptions for the Total Application Period.

---

[2] Similarly, itemized and detailed descriptions of the specific legal services rendered and out of pocket
expenses incurred by U&H during the First Application Period  are reflected on the monthly billing
statements for February 2011, March 2011, April 2011, and May 1-15, 2011 attached to the First
Application as Exhibits A, B, C, and D, respectively.

**NARRATIVE SUMMARY**

*(LOCAL RULE 5082-1(B))*

32.     Local Rule 5082-1(B)(1)(a) – During the Second Application Period, U&H

performed a variety of services on the Debtors' behalf, which were categorized into principal

activities and recorded under a series of task codes on the Billing Statements. A summary of

U&H's task codes and the total compensation requested in connection with each code follows:

| Task Code | Total (Hours) | Total ($) |
|---|---|---|
| B110 (Case Administration) | 29.90 | 12,759.50 |
| B120 (Asset Analysis/Recovery) | 1.30 | 753.50 |
| B130 (Asset Disposition) | 329.80 | 134,613.00 |
| B150 (Meeting of and Communications With Creditors) | 25.30 | 7,949.50 |
| B140 (Relief from Stay/Adeq. Protection Proceedings) | 1.80 | 1,368.00 |
| B160 (Fee/Employment Applications) | 139.50 | 55,437.00 |
| B180 (Avoidance Action Analysis) | 0.40 | 178.00 |
| B185 (Assumption/Rejection of Leases and Contracts) | 35.10 | 13,458.50 |
| B190 (Other Contested Matters) | 41.30 | 17,413.50 |
| B195 (Non-Working Travel) | 0.80 | 100.00 |
| B210 (Business Operations) | 53.40 | 20,263.00 |
| B220 (Employee Benefits/Pensions) | 25.00 | 8,925.00 |
| B230 (Financing/Cash Collections) | 123.80 | 61,568.00 |
| B240 (Tax Issues) | 8.20 | 3,137.00 |
| B250 (Real Estate) | 7.90 | 3,267.50 |
| B260 (Board of Directors Matters) | 36.40 | 16,635.50 |
| B310 (Claims Administration and Objections) | 44.70 | 16,302.00 |
| B320 (Plan and Disclosure Statement) | 245.00 | 128,794.00 |
| TOTAL: | 1,149.60 | 502,922.50 |

33.     Local Rule 5082-1(B)(1)(b) – Narrative summaries of U&H's principal activities

during the Second Application Period follow, including details as to individual tasks performed

within each activity (as recorded under the various task codes in the Billing Statements):

> (a)     **B110 (Case Administration)** – The services under this task code involved a
> variety of coordination and compliance matters, including the following:
> reviewing and commenting on the Debtors' monthly summaries of cash receipts
> and disbursements (monthly operating reports), which have been combined on a
> monthly basis into single reports due to the Debtors' unique inter-debtor cash
> management system; advising the Debtors regarding the quarterly fee owed to the

United States Trustee and documenting payment; investigating and assisting in the amendments to Fairview Ministries', Fairview Baptist Home's, and Fairview Village's bankruptcy Schedules B, F, and G; drafting of internal assignment and direction memoranda; and status and strategy conferences where multiple motions, operational issues, and/or other matters were involved. In connection with these services, U&H expended approximately 29.90 hours and incurred $12,759.50 in fees.

(b) **B120 (Asset Analysis/Recovery)** – U&H's services under this task code primarily involved factual investigation and client advice concerning liquidation of the Debtors' ownership interest in Caring Communities Insurance Company, Fairview Ministries' membership interest in Fairview Ministries Northwest, an ownership interest in life insurance policies covering certain of the Debtors' executives, and potential refunds due on unearned insurance premiums. In connection with these services, U&H expended approximately 1.30 hours and incurred $753.50 in fees.

(c) **B130 (Asset Disposition)** – During the Second Application Period, U&H's services focused on bringing the Debtors' prepetition and First Application Period asset disposition efforts to a successful conclusion. Most significantly, U&H provided extensive sales and transactional services relating to the sale of the Downers Grove Campus to Lifespace DG, LLC, which generated approximately $20 million in proceeds (approximately $5 million more than was indicated at the time letters of intent were received), and ensured a seamless transition of business operations for all residents and vendors, the injection of at least $8 million in capital improvements over the next five years, and the assumption and assignment of all residents' residency agreements, as well as numerous executory contracts and unexpired leases with vendors and other third parties.

Specifically, U&H's services in connection with the sale of the Downers Grove Campus included the following: drafting and obtaining the Court's approval of bid procedures to govern the sale process; drafting a notice to all creditors and interested parties regarding the proposed sale and bid procedures; drafting a notice to counterparties to executory contracts and unexpired leases regarding the assumption and assignment of certain executory contracts and unexpired leases, including all resident residency agreements for the Downers Grove Campus; communicating and negotiating with interested parties who submitted asset purchase agreements to achieve the highest and best offer possible; conducting due diligence on the Downers Grove Campus property, including title documents and an environmental report; communicating with residents, prospective residents, creditors, the Debtors' post-petition DIP Lenders and the Master Trustee, and other parties regarding various aspects of the proposed sale; negotiating and preparing an order approving the sale; drafting an offer of proof as to the testimony of James Nugent (the Debtors' Chief Implementation Officer) and David Fields (one of the Debtors' investment bankers at RBC Capital Markets) concerning the sale of the Downers Grove Campus; court appearances at the hearing to approve proposed bid procedures and the hearing to approve the proposed sale; and preparations for closing of the sale of the Downers Grove

Campus in the month following entry of the Court's sale order, which included drafting closing checklists, a termination of ground lease, form assumption and assignment agreements, certificates, a closing statement, and a letter of direction, as well as updating the disclosure schedules to the asset purchase agreement, negotiating with Lifespace DG, LLC concerning the Debtors' receivables and other aspects of business operations, and representing the Debtors at the closing that occurred at the end of July 2011.

U&H also provided other asset disposition services during the Second Application Period, including the following: investigating the terms of sale of real property owned by Fairview Ministries Northwest in Washington that was encumbered by the lien of Umpqua Bank; negotiating with Umpqua Bank's counsel regarding terms of the proposed sale of that real property to a third party, PAWS; drafting documents for the sale of that real property to PAWS; negotiating with counsel to Caring Communities Insurance Company regarding the terms of the Debtors' proposed redemption of their part ownership interest; drafting a motion to approve the redemption of the Debtors' ownership interest in Caring Communities Insurance Company; drafting a motion to approve the Debtors' exercise of ownership rights in life insurance policies covering certain executives; and drafting a motion to approve the sale of the Debtors' equity ownership interest in LifeBio in return for certain benefits provided to residents of the Downers Grove Campus. In connection with all of these services, U&H expended approximately 329.80 hours and incurred $134,613.00 in fees.

(d) **B140 (Relief from Stay/Adequate Protection Proceedings)** – Under this task code, U&H successfully resolved two motions for relief from the automatic stay filed during the First Application Period. In the first, U&H negotiated with counsel to Umpqua Bank to temporarily delay obtaining stay relief that would permit the bank to apply funds of Fairview Ministries held in an account that secured indebtedness of Fairview Ministries Northwest pending the valuation and sale of real property that, based on preliminary investigation, could have potentially satisfied all outstanding indebtedness and permitted Fairview Ministries to regain access to the funds in its account. Although the purchase price paid did not ultimately permit the Debtors to regain access to those funds, U&H's efforts enabled the Debtors to come to that conclusion without the expense of filing an objection and engaging in briefing and an evidentiary hearing. In the other motion for relief from the automatic stay, U&H negotiated a settlement of the creditor's underlying personal injury claim, drafted a settlement agreement and motion to approve the settlement agreement, and ultimately resolved the Debtors' potential liability in such a way that no money would be paid directly by the Debtors' estates and the pool of general unsecured claims would be reduced by $400,000. In connection with these services, U&H expended approximately 25.30 hours and incurred $7,949.50 in fees.

(e) **B150 (Meeting of and Communications With Creditors)** – Under this task code, U&H prepared for and engaged in a conference call with counsel to the Creditors' Committee regarding their demand for a dividend to general unsecured

creditors. In connection with these services, U&H expended approximately 1.80 hours and incurred $1,368.00 in fees.

(f) **B160 (Fee/Employment Applications)** – U&H's primary services under this task code related to coordinating and leading the Debtors' other professionals and the Creditors' Committee's counsel in preparing first interim fee applications. Specifically, U&H's services included reviewing and commenting on the other professionals' fee applications to both determine whether the Debtors should approve the amounts requested and ensure compliance by those other professionals with the requirements of the Bankruptcy Code, Bankruptcy Rules, and Local Rules; drafting a form detailed notice of hearing to be used by all professionals; and coordinating service of those detailed notices of hearing by Garden City Group, the Debtors' notice, claims, and balloting agent. By requesting the Debtors' and Creditors' Committee's professionals to use the detailed notice of hearing and seek approval of limited notice of the first interim fee applications, U&H successfully helped the Debtors' estates save approximately $309,000 of copying and postage expenses versus the cost to be expected if each professional had otherwise served a full copy of each fee application to all 3,600 creditors and parties in interest. U&H expects that the Debtors' estates will save a similar amount in connection with all professionals' final fee applications, which will also seek approval of limited notice and service of only detailed notices of hearing to all creditors and parties in interest.

Under this task code, U&H also reviewed and revised its monthly billing statements to ensure compliance with the requirements of the Bankruptcy Code, Bankruptcy Rules, and Local Rules; drafted U&H's First Application and Final Application (including detailed exhibits appended thereto); and appeared in Court for several hearings on the First Application. In connection with all of these services, U&H expended approximately 139.50 hours and incurred $55,437.00 in fees.

(g) **B180 (Avoidance Action Analysis)** – Under this task code, U&H communicated with the Creditors' Committee's counsel regarding the wind-down of these chapter 11 cases and treatment of avoidance actions. In connection with these services, U&H expended approximately 0.40 hour and incurred $178.00 in fees.

(h) **B185 (Assumption/Rejection of Leases and Contracts)** – The services provided by U&H under this task code included drafting a detailed notice of counterparties to executory contracts and unexpired leases in connection with the sale of the Downers Grove Campus; investigating and reviewing dozens of executory contracts and unexpired leases to determine whether the Debtors would assume and assign or reject them; communicating with the Debtors and counterparties regarding proposed assumption and assignment of certain executory contracts and unexpired leases to Lifespace DG, LLC; and drafting a termination notice regarding one of the Debtors' consulting contracts. In connection with these services, U&H expended approximately 35.10 hours and incurred $13,458.50 in fees.

(i) **B190 (Other Contested Matters)** – Under this task code, U&H negotiated with counsel to Richard and Kathleen Olson regarding liquidation of the Debtors' equity interest in their home; conducted a factual investigation into the value of the Olson's home and other terms of potential settlement; drafted a settlement agreement and motion to approve that settlement agreement; and appeared in Court to obtain approval of the settlement agreement. In connection with these services, U&H expended approximately 41.30 hours and incurred $17,413.50 in fees.

(j) **B195 (Non-Working Travel)** – U&H's services under this task code reflect the deadline-sensitive retrieval of a certified copy of an order entered by the Court by one of U&H's personnel. In connection with these services, U&H expended approximately 0.80 hour and incurred $100.00 in fees.

(k) **B210 (Business Operations)** – During the Second Application Period, the Debtors' day-to-day business operations largely ceased. U&H provided a variety of services relating to wind-up of the Debtors' operations in chapter 11, including the following: researching and advising the Debtors regarding records retention requirements under HIPAA and Illinois law; communicating with the Illinois Department of Public Health regarding a deficiency notice; and advising the Debtors regarding transition issues relating to the closing of the sale of the Downers Grove Campus and wind-up of operations, including licensing and regulatory matters, a Medicare cost report,  D&O and other insurance policies, health and safety issues, and payroll. In connection with these services, U&H expended approximately 53.40 hours and incurred $20,263.00 in fees.

(l) **B220 (Employee Benefits/Pensions)** – Under this task code, U&H investigated termination of the Debtors' 401(k) and 403(b) plans, drafted correspondence to plan participants regarding termination of those plans, and prepared plan amendment documents and board resolutions effecting termination of those plans. In connection with these services, U&H expended approximately 25.0 hours and incurred $8,925.00 in fees.

(m) **B230 (Financing/Cash Collections)** – During the Second Application Period, U&H represented the Debtors in weekly telephone conferences with the Debtors' lenders and secured creditors, and helped to ensure that the Debtors remain in compliance with the terms of the DIP Credit Agreement and Final DIP Order. As the Debtors authority to use cash collateral was set to expire under the Final DIP Order on July 29, 2011, U&H negotiated with the Debtors' lenders to approve a wind-down budget through September 30, 2011 that would increase the carve-out for professionals and enable the Debtors to successfully conclude the liquidation of their assets. In that regard, U&H conducted numerous negotiation sessions with the Debtors' lenders, drafted a motion to amend the Final DIP Order, assisted in the preparation of an amended budget, and presented the Debtors' emergency motion to amend the Final DIP Order to the Court. As a result in part of U&H's efforts, the Debtors were able to avoid a costly dispute with their secured creditors and achieve a path to consensual resolution of these chapter 11 bankruptcy cases that will provide for a partial distribution to general unsecured creditors. In

connection with these services, U&H expended approximately 123.80 hours and
incurred $61,568.00 in fees.

(n) **B240 (Tax Issues)** – U&H's services under this task code generally consisted of
investigating, researching, and advising the Debtors concerning potential tax
implications of the Debtors' settlement with Richard and Kathleen Olson,
communicating with the Illinois Department of Revenue concerning tax matters,
and preparing and submitting required tax forms on behalf of the Debtors. In
connection with these services, U&H expended approximately 8.20 hours and
incurred $3,137.00 in fees.

(o) **B250 (Real Estate)** – Under this task code, U&H communicated with the
Debtors' title company and prepared a closing statement and other documents in
connection with the sale of the Downers Grove Campus. In connection with these
services, U&H expended approximately 7.90 hours and incurred $3,267.50 in
fees.

(p) **B260 (Board of Directors Matters)** – During the Second Application Period,
U&H researched and made presentations to the Debtors' board of directors
concerning termination of the Debtors' 401(k) and 403(b) plans, approval of the
sale of the Downers Grove Campus, and the liquidation and dissolution of non-
debtor affiliates Fairview Elder Enterprises, Fairview Ministries Northwest, and
Fairview Properties. U&H also drafted board resolutions to approve those actions
and to approve conversion of the Debtors' chapter 11 cases to cases under chapter
7 of the Bankruptcy Code. In connection with these services, U&H expended
approximately 36.40 hours and incurred $16,635.50 in fees.

(q) **B310 (Claims Administration and Objections)** – Under this task code, U&H
communicated with individual creditors regarding their claims, advised the
Debtors regarding potential administrative expenses under Section 503(b)(9) of
the Bankruptcy Code, and drafted a motion to set the last day to file requests for
payment of administrative expenses. Although U&H prepared a motion to set the
last day to file claims during the First Application Period, the Debtors have
decided not to file that motion because the Debtors seek conversion of their cases,
which would make the cost of serving individual notices in these chapter 11 cases
wasteful considering such notices will be sent upon conversion. In connection
with these services, U&H expended approximately 44.70 hours and incurred
$16,302.00 in fees.

(r) **B320 (Plan and Disclosure Statement)** – Initially, the Debtors contemplated
resolution of their chapter 11 cases through a structured dismissal or chapter 11
plan of liquidation. U&H researched, conducted internal strategy sessions,
advised the Debtors, and communicated with the Debtors' secured creditors
regarding proposals for a structured dismissal versus a chapter 11 plan, including
proposed timelines and budgets. During the Second Application Period, the
Debtors' secured creditors indicated their unwillingness to resolve these cases
other than through conversion to chapter 7 cases. Accordingly, U&H prepared
memoranda regarding proposed terms of conversion and projects remaining to be
completed pre-conversion, advised the Debtors, and negotiated and

communicated with the secured creditors' counsel, the Creditors Committee's counsel, and the United States Trustee regarding the proposed conversion of these cases. Ultimately, the parties arrived at a consensual proposal, and U&H researched and drafted the Debtors' motion to convert chapter 11 cases to cases under chapter 7, which will be presented in late September 2011. In connection with these services, U&H expended approximately 245.0 hours and incurred $128,794.00 in fees.

34.    <u>Local Rule 5082-1(B)(1)(c)</u> – By this Final Application, U&H seeks compensation of approximately $40,000 for approximately 105 hours of legal services in connection with the preparation of the First Application and this Final Application, including revising the Billing Statements to ensure compliance with the requirements of the Bankruptcy Code, Bankruptcy Rules, and Local Rules and preparing for and attending multiple hearings before the Court on the First Application and an anticipated appearance on this Final Application.

35.    <u>Local Rule 5082-1(B)(1)(d)</u> – A chart listing the name and position of each person with U&H who performed work on each task and activity, the approximate hours worked, and the total compensation sought for each person's work on each such separate task and activity during the Second Application Period is attached as **Exhibit F**. A similar such chart covering all activity during the Total Application Period is attached as **Exhibit G**.

36.    <u>Local Rule 5082-1(B)(1)(e)</u> – The charts attached as Exhibit F and G also set forth the hourly rate for each professional and paraprofessional for whom compensation is requested, with the total number of hours expended by each person and the total compensation sought for each during the Second Application Period and the Total Application Period, respectively.

37.    <u>Local Rule 5082-1(B)(1)(f)</u> – On June 16, 2011, U&H filed the First Application, seeking compensation of $1,083,851.00 and reimbursement of expenses of $15,591.36. As of the date this filing, the Court has not previously allowed U&H any compensation in this case.

38.     <u>Local Rule 5082-1(B)(1)(g)</u> – U&H seeks the reimbursement of expenses totaling $2,355.13. A breakdown of each type of expense is included on each of the Billing Statements attached as Exhibits A, B, C, and D. To summarize them here, the expenses incurred by U&H primarily related to the following: court costs (*e.g.*, court reporter, filing fees), registration fees (*e.g.*, secretary of state fees), local travel expenses (*e.g.*, taxi rides home for professionals working late), "working meals" for professionals who were working late or meeting with the Debtors' representatives and other professionals for daytime conferences, messenger charges that were incurred in delivering courtesy copies of pleadings and documents to the Court, the United States Trustee's office, the Illinois Attorney General, and other parties, document reproduction charges, computerized research costs (*e.g.*, Westlaw and documents retrieved using PACER), long distance and facsimile telephone expenses, and postage.

39.     For documents, pleadings, or correspondence that were delivered by messenger, facsimile, or Federal Express, as opposed to delivery by first class mail, such expedited delivery was deemed absolutely necessary in the exercise of discretion by the responsible attorney in order to meet court deadlines or otherwise insure the efficient and orderly administration of services to the Debtor. For taxi fare and "working meals," such expenses were deemed absolutely necessary in the exercise of the responsible attorney's discretion in order to comply with an imminent deadline and involved attorneys working late into the evening, on occasion past midnight. U&H charged "at cost" amounts for copying ($0.10 per page) and facsimiles ($0.44 per page). None of the expenses, including but not limited to computerized research, includes any additional charges added to the actual cost to U&H.

40.     All of the expenses for which U&H seeks reimbursement were actually incurred by U&H, were necessary for the proper representation of the Debtors in these cases, and were

specifically allocated to the Debtors' cases. None of the expenses represents general overhead or

other expenses unrelated to this case.

41.  Local Rule 5082-1(B)(2) – By this Final Application, U&H seeks both the

allowance and payment of its requested fees and expenses. The Debtors' payment of

compensation and reimbursement of expenses awarded to U&H will come from the Carve Out in

the Budget and the Advance Payment Retainer currently held by U&H.

## DETAILED STATEMENT OF SERVICES
### *(LOCAL RULE 5082-1(C))*

42.  The Bankruptcy Rules require "[a]n entity seeking interim or final compensation

for services, or reimbursement of necessary expenses, from the estate [to] file an application

setting forth a detailed statement of (1) the services rendered, time expended and expenses

incurred, and (2) the amounts requested." Fed. R. Bankr. P. 2016(a). The Local Rules permit

"[t]he applicant's detailed time records [to] constitute the detailed statement required by Fed. R.

Bankr. P. 2016(a). Such statement must be divided by task and activity to match those set forth

in the narrative description. Each time entry must state: (1) the date the work was performed, (2)

the name of the person performing the work, (3) a brief statement of the nature of the work, (4)

the time expended on the work in increments of tenth of an hour, and (5) the fee charged for the

work described in the entry." Local R. 5082-1(C).

43.  The Billing Statements attached as Exhibits A, B, C, and D comply with the

requirements of Bankruptcy Rule 2016(a) and Local Rule 5082-1(C) because each Billing

Statement is divided by tasks and activities that match the narrative descriptions in this Final

Application, and all time entries within the Billing Statements list the date of the work, name of

person performing the work, a brief description of the nature of the work, and the time expended

on the work in increments of tenth of an hour.

## U&H'S RESERVATION OF RIGHTS TO FILE A SUPPLEMENT

44.     Due to the Debtors' need to liquidate remaining assets and complete the wind-down of their estates before the Conversion Motion is heard on September 27, 2011, the Debtors will require additional legal services of U&H between August 22, 2011 and September 30, 2011.

45.     In anticipation of the projects remaining to be completed before September 30, 2011, U&H has included in this Final Application estimates of compensation for services to be rendered and expenses to be incurred by U&H between August 22, 2011 and September 30, 2011. U&H estimates that the remaining projects will require 165 hours of services, which will generate approximately $80,000 in compensation.

46.     U&H reserves its right to file with the Court a supplement to the Final Application setting forth actual fees and expenses after the date of this filing and attaching additional Billing Statements for purposes of reconciling U&H's estimates to amounts actually incurred.

## SUMMARY OF THE FIRST APPLICATION

47.     By this Final Application, U&H also seeks approval on a final basis of all compensation ($1,083,851.00) and reimbursement of expenses ($15,591.36) previously sought by U&H on an interim basis in connection with the First Application.

48.     U&H used the same task codes during the First Application Period and the Second Application Period. In the First Application, U&H provided narrative summaries of the principal activities and services rendered on behalf of the Debtor, which are incorporated by reference.

49.     To summarize them herein, U&H's principal activities during the First Application Period consisted of the following:

(a) Advising and assisting the Debtors in complying with administrative requirements for chapter 11 debtors in possession (*e.g.*, monthly summaries of cash receipts and disbursements, bankruptcy schedules and statements of financial affairs, etc.);

(b) Investigating potential assets of the Debtors' bankruptcy estates for liquidation;

(c) Providing extensive sales and transactional services relating to asset disposition, including the sale of Crimson Pointe for over $8.6 million (and the assumption of over $37,000 of prepetition trade debt) and the sale of the Downers Grove Campus for over $20 million (including the injection of at least $8 million in capital improvements over the next five years and the assumption and assignment of all residents' residency agreements);

(d) Representing and advising the Debtors in connection with the initial meeting with the United States Trustee's representative, Section 341(a) meeting of creditors, and multiple meetings with the Creditors' Committee;

(e) Leading the Debtors' team of legal, financial, and accounting professionals by negotiating terms of engagement, drafting applications for employment, and coordinating applications for compensation;

(f) Reviewing hundreds of executory contracts and unexpired leases of the Debtors for possible assumption and assignment or rejection;

(g) Drafting the Debtors' "first day" motions that ensured the Debtors' smooth transition into chapter 11, a motion to determine that a patient care ombudsman is not necessary, motions to approve settlement with several vendors and creditors, and various other motions designed to maximize the value of the Debtors' estates;

(h) Communicating and advising the Debtors concerning business operational matters that arose during the First Application Period;

(i) Investigating and researching legal and factual issues concerning the Debtors' employee benefits plans;

(j) Negotiating with the Debtors' lenders and creditors regarding DIP financing, drafting and revising a credit agreement, budget, motion, and orders, and working with the Debtors to ensure their compliance with loan covenants and budgetary requirements;

(k) Researching and advising the Debtors concerning tax matters;

(l) Preparing resolutions of the Debtors' board of directors and advising directors concerning their duties in the Debtors' chapter 11 bankruptcy cases;

(m) Analyzing claims and requests for administrative expenses filed by creditors; and

(n) Researching and preparing potential "exit strategy" documents for the Debtors' chapter 11 cases.

## **BASIS FOR RELIEF**

50.     Pursuant to Section 330 of the Bankruptcy Code and the generally applicable criteria with respect to time, nature, extent, and value of services performed, all of U&H's services are compensable and the compensation requested is fair and reasonable. All of the legal services performed by U&H during the Total Application Period were required for the proper representation of the Debtors in these bankruptcy cases.

51.     U&H has endeavored to: (a) avoid lumping multiple tasks into a single entry; (b) minimize time spent on interoffice conferences, though at times, such conferences were necessary and unavoidable; and (c) provide detail about each task, such as the subject matter of each telephone conference, correspondence, document review, etc.

52.     There has been no duplication of services by partners, associates, paralegals, or clerks of U&H for which compensation is requested herein. In instances where two or more attorneys, paralegals or clerks participated in any matter, joint participation was deemed necessary due to the complexity of the problems involved. U&H has thoroughly reviewed its billing statements to eliminate any non-compensable interoffice conferences of its professionals. However, U&H professionals have been required to conduct a limited number of conferences to provide effective legal representation to the Debtors as outlined in *In re Adventist Living Ctrs., Inc.*, 137 B.R. 701, 716 (Bankr. N.D. Ill. 1991).

53.     From the outset of this case, professionals at U&H were instructed to avoid recording time entries which contained "lumping" as discussed in *In re Pettibone Corp.*, 74 B.R. 293, 302 (Bankr. N.D. Ill. 1987).

54.     The compensation sought by U&H in this Final Application is for ordinary and necessary services rendered to the Debtors, and the fees sought are reasonable. Due to the not-for-profit nature of the Debtors and the fact that the Debtors have been long-time clients of U&H, the hourly rates for U&H professionals who performed services for the Debtors during the Total Application Period reflect a discount of approximately 10% from U&H's standard restructuring rates for cases of this size, complexity, and intensity (the "U&H Client NFP Discount"). The total dollar amount of this discount during the Total Application Period comes to $178,580.50.

55.     The rates charged by U&H are less than or comparable to rates charged by other practitioners having the same amount of experience, expertise, and standing for similar services in comparable Chapter 11 cases in the Northern District of Illinois.

56.     U&H prepared this Final Application in accordance with the guidelines established by Bankruptcy Rule 2016, Local Rule 5082-1, and this Court. In addition to services provided directly for the benefit of the estate, U&H is also entitled to receive compensation for the preparation of this First Application. *Pettibone*, 74 B.R. at 304.

57.     Although the Court has discretion in reviewing a fee petition, it should exercise its discretion with care and fairness in order to promote the goal of inducing competent and capable attorneys to practice in the bankruptcy court. *See Pettibone*, 74 B.R. at 306.

58.     U&H has at all times acted specifically in the best interests of the Debtors and their estates. All legal services performed by U&H and all expenses incurred were reasonable and necessary for the preservation of the Debtors' bankruptcy estates.

59.     U&H has not entered into an agreement or understanding of any kind, expressed or implied, with any entity to share in its compensation received or to be received by U&H for services rendered to the Debtors in this case.

60.     This is U&H's final application for an award of compensation and reimbursement of expenses. Accordingly, U&H may present this Final Application pursuant to Section 330 of the Bankruptcy Code.

## REQUEST TO APPROVE LIMITED NOTICE

61.     The Debtors have provided copies of this Final Application to (a) the Office of the United States Trustee; (b) the Debtors' secured creditors; (c) Neal Wolf & Associates, LLC, counsel to the Creditors' Committee; (d) Mintz Levin Cohn Ferris Glovsky and Popeo, PC, counsel to Wells Fargo Bank, National Association, in its capacity as Master Trustee under that certain Master Indenture dated as of January 1, 2008; (e) Winston & Strawn LLP, counsel to secured lender Bank of America, N.A.; (f) Holland & Knight LLP, counsel to secured lender Hinsdale Bank and Trust Company; (g) those persons who have formally appeared and requested service in these proceedings pursuant to Bankruptcy Rule 2002 (collectively, the "Notice Parties").

62.     Additionally, Garden City Group, the Debtors' notice, claims, and balloting agent, has served on all creditors and parties in interest by first class mail a detailed notice of hearing on this Final Application that identifies the applicant and the amounts requested and provides instructions on requesting – free of charge – a hard copy and/or accessing an electronic copy via the free case management website maintained by Garden City Group.

63.     U&H requests that the Court excuse the notice requirement of Bankruptcy Rule 2002(a)(6) and approve the limited notice of the Final Application as sufficient and appropriate

under the circumstances. Limited notice of the Final Application is sufficient in light of the

expense to the Debtors' bankruptcy estate of individually serving approximately 3,600 creditors

and parties in interest with the Final First Application and the lack of an offsetting benefit given

that the Notice Parties, including the United States Trustee and the Creditors' Committee, will

receive copies of this Final First Application. Further, the detailed notice of hearing provides all

creditors with instructions on how to request a hard copy or retrieve an electronic copy of this

Final Application free of charge.

WHEREFORE, Ungaretti & Harris LLP respectfully requests that this Court enter an

order:

(a) granting U&H's request to limit notice as set forth above and finding that the
notice of this Final Application was sufficient;

(b) allowing and approving U&H's fees in the amount of $502,922.50 as
reasonable compensation for 1,149.60 hours of actual, necessary legal services
rendered to the Debtors during the Second Application Period and the
additional time from the First Application Period inadvertently not previously
included in the First Application, plus an additional $80,000 of estimated fees
for an estimated 165 hours of services to be rendered between August 22,
2011 and September 30, 2011;

(c) allowing and approving U&H's out of pocket costs in the amount of
$2,355.13 as actual, necessary expenses recorded between May 16, 2011 and
September 30, 2011, which includes some additional expenses from the First
Application Period inadvertently not previously included in the First
Application;

(d) awarding U&H compensation in the amount of $1,596,773.50, plus an
additional $80,000 of estimated fees for an estimated 165 hours of services to
be rendered between August 22, 2011 and September 30, 2011, and
reimbursement of expenses in the amount of $3,731.18 on a final basis for
legal services rendered to the Debtors during the Total Application Period;

(e) authorizing and directing the Debtors to pay – subject to any applicable
limitations contained in the *Agreed Order Amending Final Order (1)
Authorizing Debtor in Possession to Obtain Postpetition Financing; (2)
Authorizing Use of Cash Collateral; (3) Providing Adequate Protection; and
(4) Granting Liens, Security Interests and Superpriority Claims* [Dkt. 384]
and the related Budget – to U&H the sum of $1,600,504.68, plus an additional

$80,000 of estimated fees for an estimated 165 hours of services to be rendered between August 22, 2011 and September 30, 2011; and

(f)  granting such other relief as this Court deems necessary or appropriate.

Respectfully submitted,

Dated: August 22, 2011                    UNGARETTI & HARRIS LLP

by:   /s/ Patrick F. Ross
                                          _____

Donald L. Schwartz (# 2522861)
George R. Mesires (# 6276952)
Patrick F. Ross (# 6296461)
UNGARETTI & HARRIS LLP
70 W. Madison Street, Suite 3500
Chicago, IL 60602
(312) 977-4400 – phone
(312) 977-4405 – fax
Email: dlschwartz@uhlaw.com
       grmesires@uhlaw.com
       pfross@uhlaw.com

*Counsel for the Debtors and
Debtors in Possession*