IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In re: ) | Lead Case No. 11-04386 |
| ) | (Jointly Administered) |
| FAIRVIEW MINISTRIES, INC., *et al.*,[1] ) | |
| ) | Hon. Susan Pierson Sonderby |
| Debtors. ) | |
| ) | Chapter 7 |

## DEBTORS' FINAL REPORT AND SCHEDULE
## OF UNPAID POST-PETITION DEBTS

The above-captioned Debtors (the "Debtors"), pursuant to Rule 1019(5)(A) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), hereby submit the following Final Report and Schedule of Unpaid Post-Petition Debts (the "Report").

## INTRODUCTION

1. On February 4, 2011 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the Bankruptcy Court for the Northern District of Illinois, Eastern Division (the "Court").

2. During the pendency of the chapter 11 cases, the Debtors remained in possession of their assets and operated their businesses as debtors in possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

3. On August 9, 2011, the Debtors filed their *Motion to Convert Cases Under Chapter 11 to Cases Under Chapter 7* [Dkt. 386] seeking entry of an order converting the Debtors' chapter 11 cases to cases under chapter 7 of the Bankruptcy Code.

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are Fairview Ministries, Inc. (2067), Fairview Village (2068), Fairview Baptist Home, d/b/a Fairview Center for Health & Wellness (9812), Fairview Residence of Rockford, d/b/a Crimson Pointe (8394), and VibrantLiving Communities & Services (1604).

2036116-6

4. On September 29, 2011, the Court entered its *Order Converting Cases Under Chapter 11 to Cases Under Chapter 7* [Dkt. 461] (the "Conversion Order"), which, among other things, converted the Debtors' chapter 11 cases to cases under chapter 7 effective at 11:59 p.m. on September 30, 2011 (the "Conversion Date")

5. On September 28, 2011, David R. Brown was appointed to serve as the interim chapter 7 trustee in these cases (the "Trustee"). *See* Notice of Appointment [Dkt. 454].

6. On October 11, 2011, the Debtors filed their Summary of Cash Receipts and Disbursements for the Period Ending September 30, 2011 [Dkt. 472], which is the final "monthly operating report" the Debtors will file.

7. The Debtors' submit this Report in compliance with the requirements of Paragraphs No. 2(b) and (c) of the Conversion Order.

## SCHEDULE OF POST-PETITION DEBTS

8. In relevant part, the Bankruptcy Rules require that "if a chapter 11 … is converted to chapter 7, the debtor in possession … shall (i) not later than 14 days after conversion of the case, file a schedule of unpaid debts incurred after the filing of the petition and before conversion of the case, including the name and address of each holder of a claim." Fed. R. Bankr. P. 1019(5)(A)(i).

### Statutory Bankruptcy Fees

9. All quarterly fees owed to the United States Trustee pursuant to 28 U.S.C. § 1930(a)(6) have been paid. *See* U.S. Trustee Quarterly Fee Statements for Calendar Quarter Ending March 31, 2011 [Dkts. No. 251, 252, 253, 254, and 255], U.S. Trustee Quarterly Fee Statements for Calendar Quarter Ending June 30, 2011 [Dkts. No. 354, 355, 356, 357, and 358],

and U.S. Trustee Quarterly Fee Statements for Calendar Quarter Ending September 30, 2011 [Dkts. No. 375, 376, 377, 378, and 379].

**Administrative Expenses and Professional Compensation**

10.     On July 15, 2011, the Debtors filed their *Motion to (A) Set Last Day to File Requests for Allowance and Payment of Administrative Expenses Pursuant to 11 U.S.C. §§ 503 and 507(a)(2) and Applications by Professionals for Final Approval of Compensation and Reimbursement Pursuant to Section 330(a), and (B) Approve Form and Manner of Notice of Administrative Expense Bar Date* [Dkt. 342] (the "Motion to Set Administrative Expense Bar Date").

11.     On or about July 25, 2011, the Court entered the *Order (A) Setting Last Day to File (I) Requests for Allowance and Payment of Administrative Expenses Pursuant to 11 U.S.C. §§ 503 and 507(a)(2,) and (II) Applications by Professionals for Final Approval of Compensation and Reimbursement Pursuant to Section 330(a), and (B) Approving Form and Manner of Notice of Administrative Expense Bar Date and Professional Compensation Bar Date* [Dkt. 349] (the "Administrative Expense Bar Date Order").

12.     Pursuant to the Administrative Expense Bar Date Order, (i) August 15, 2011 was set as the last day by which all requests for allowance and payment of administrative expenses pursuant to Sections 503(b) and 507(a)(2) of the Bankruptcy Code that arose before July 31, 2011 had to be filed (the "Administrative Expense Bar Date"), and (ii) August 22, 2011 was set as the last day by which all professionals' applications for final approval of compensation and reimbursement under Section 330(a) of the Bankruptcy Code had to be filed (the "Professional Compensation Bar Date"). *See* Order [Dkt. 349] ¶¶ 3-4.

13. The Administrative Expense Bar Date Order also stated that "except as otherwise provided under the Bankruptcy Rules to preserve rights under Bankruptcy Rule 9006(b), to the extent that (i) any request for allowance and payment of administrative expenses arising on or before July 31, 2011 has not been filed before the Administrative Expense Bar Date, and (ii) any applications by professionals for final approval [of] compensation and reimbursement has not been filed before the Professional Compensation Bar Date, *such requests are forever barred and disallowed to the extent the claimant received actual notice* of the Administrative Expense Bar Date and Professional Compensation Bar Date." *See* Order [Dkt. 349] ¶ 5 (emphasis added).

14. The Administrative Expense Bar Date and the Professional Compensation Bar Date have both passed.

15. Before the Conversion Date passed, the Debtors paid all chapter 11 administrative expenses incurred or requested and all professional compensation awarded by the Court during the chapter 11 cases, with the exceptions of the alleged unpaid debts incurred after the Petition Date and before the Conversion Date of claimants listed on the schedule attached hereto as **Exhibit A** and incorporated by reference.

## FINAL REPORT AND ACCOUNT

16. In relevant part, the Bankruptcy Rules also require that "if a chapter 11 … is converted to chapter 7, the debtor in possession … shall … (ii) not later than 30 days after conversion of the case, file and transmit to the United States trustee a final report and account." Fed. R. Bankr. P. 1019(5)(A)(ii).

17. The Debtors have discussed all material aspects of the cases with the Trustee. Additionally, pursuant to Paragraph No. 2(a) of the Conversion Order, the Debtors have accounted for and turned over to the Trustee all records in the possession or control of the

Debtors, and all remaining assets of the Debtors: (a) $77,000 in Bank of America operating account no. ending -2378[2]; (b) accounts receivable totaling $181,029; (c) $50,000 in a Chicago Title escrow account[3]; and (d) all right, title, and interest to ownership interests the Debtors have or hold in non-debtor entities. These remaining assets are property of the Debtors' estates and subject to administration by the Trustee.

18. The following assets were liquidated during these chapter 11 cases after authorization by the Court:

| | **Asset Liquidated and Docket No. of Order Authorizing the Disposition Taken** | **Disposition Taken** |
|---|---|---|
| (a) | 100 shares of common stock of Midwest Senior Care Network, Inc., d/b/a Health Resources Alliance, which is the sole equity holder of Alliance Pharmacy Services LLC and Alliance Rehab, Inc. [Dkt. 209] | Pursuant to the terms of a settlement agreement, the Debtors sold, transferred, and assigned the 100 shares to HRA free and clear of any liens, claims, interests or encumbrances for $725,000 (initially, payment in kind), the reinstatement by HRA and assumption by the Debtors of certain vital prepetition contracts, and the waiver by the Alliance-affiliated parties of all prepetition claims, administrative expenses due pursuant to 11 U.S.C. § 503(b)(9), and contract cure amounts. |

---

[2] Pursuant to the Court's *Agreed Order Amending Final Order (1) Authorizing Debtor in Possession to Obtain Postpetition Financing; (2) Authorizing Use of Cash Collateral; (3) Providing Adequate Protection; and (4) Granting Liens, Security Interests and Superpriority Claims* [Dkt. 384] (the "Agreed Cash Collateral Order"), $75,000 of this amount has been set aside for the Trustee to make a distribution to the holders of unsecured claims (other than the Master Trustee's (and other prepetition bondholders') deficiency claims and inter-company claims). *See* Agreed Cash Collateral Order at 2-3 and Ex. A ("Notes").

[3] Pursuant to the Agreed Cash Collateral Order, this $50,000 has been set aside for payment of the Trustee's fees. *See* Agreed Cash Collateral Order at Ex. A ("Notes").

| | **Asset Liquidated and Docket No. of Order Authorizing the Disposition Taken** | **Disposition Taken** |
|---|---|---|
| (b) | The Rockford Campus, a/k/a Crimson Pointe [Dkt. 232] | Pursuant to the terms of an Asset Purchase Agreement with Senior Housing Properties Trust, the Debtors sold Crimson Pointe free and clear of any liens, claims, interests or encumbrances to SHPT for $8,750,000 plus the assumption by SHPT of approximately $37,000 of the Debtors' prepetition trade debt. |
| (c) | A total of $255,755,37 held in two deposit accounts held at Umpqua Bank [Dkt. 281] | Pursuant to an order entered on June 1, 2011, the automatic stay was modified to permit Umpqua Bank to exercise its rights and remedies as to the two deposit accounts, which had been pledged prepetition as security for a loan by the bank to a non-debtor entity that was in default prior to the chapter 11 bankruptcy filing. |
| (d) | The Downers Grove Campus [Dkt. 308] | Pursuant to the terms of an Asset Purchase Agreement with Lifespace DG, LLC, the Debtors sold the Downers Grove Campus free and clear of any liens, claims, interests or encumbrances to Lifespace DG for $20,000,000 (a purchase price credit was allowed for the assumption of post-petition debts and certain contract cure payments) plus the assumption by Lifespace DG of all residents' residency agreements, the investment by Lifespace DG of $3,000,000 of liquidity and at least $8,000,000 in capital improvements over the next five years. |

|   | **Asset Liquidated and Docket No. of Order Authorizing the Disposition Taken** | **Disposition Taken** |
|---|---|---|
| (e) | An undivided 16.07% beneficial interest in certain improved real estate commonly known as 371 Ranney Avenue, Vernon Hills, Illinois, a/k/a the Olson Shared Equity Agreement [Dkt. 353] | Pursuant to the terms of a Settlement Agreement with Richard W. Olson and Kathleen G. Olson, the Olsons paid the Debtors $16,000 in cash, plus forwent payout of accrued vacation (which was used to pay payroll tax obligations related to the settlement agreement) and provided services to ensure regulatory filings were made on behalf of the Debtors, for the Debtors' equity interest in the Olsons' home, and the Debtors agreed to forgive payment of the remaining amount due under the Shared Equity Agreement. |
| (f) | Two life insurance policies issued by Principal Life Insurance Company [Dkt. 418] | Pursuant to an order entered on August 26, 2011, the Debtors were authorized to terminate and surrender the two life insurance policies. On September 2, 2011, the Debtors received $190,765.69 from the surrender of those policies. |
| (g) | Four parcels of resential real property located on the west side of Fairview Avenue in Downers Grove, Illinois [Dkt. 429] | Pursuant to a Real Estate Purchase Agreement with Greenscape Ventures, LLC, the Debtors sold the four parcels of real property for $420,000. |
| (h) | A Charter Capital Account and a Member Savings Account with Caring Communities, a Reciprocal Risk Retention Group [Dkt. 434] | Pursuant to a Redemption and Distribution Agreement with Caring Communities, a Reciprocal Risk Retention Group, the Debtors surrendered their certificate representing the Charter Capital Account with CCrRRG in exchange for the payment by CCrRRG of $55,000 to the Debtors and the termination of the Debtors' rights and obligations with regard to CCrRRG and any future claims made by third parties. |

|     | **Asset Liquidated and Docket No. of Order Authorizing the Disposition Taken** | **Disposition Taken** |
| --- | --- | --- |
| (i) | A disputed 5.8% ownership interest (Series A Convertible Preferred Stock) in LifeBio, Inc. [Dkt. 435] | Pursuant to a Certified Organization Agreement with LifeBio, LifeBio will provide residents of the Downers Grove Campus with enrichment activities and services with a value of approximately $55,993 over the next seven years, and the Debtors will waive any claim to equity ownership in LifeBio or debt obligations owed by LifeBio. |

Respectfully submitted,

Dated: October 14, 2011

FAIRVIEW MINISTRIES, INC., *et al.*

by: /s/ Patrick F. Ross

Donald L. Schwartz (# 2522861)
George R. Mesires (# 6276952)
Patrick F. Ross (# 6296461)
Ungaretti & Harris LLP
70 W. Madison Street, Suite 3500
Chicago, IL 60602
(312) 977-4400 – phone
(312) 977-4405 – fax
Email:  dlschwartz@uhlaw.com
　　　　grmesires@uhlaw.com
　　　　pfross@uhlaw.com

*Counsel for the Debtors and Debtors in Possession*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Lead Case No. 11-04386 |
| | ) | (Jointly Administered) |
| FAIRVIEW MINISTRIES, INC., *et al.*, | ) | |
| | ) | Hon. Susan Pierson Sonderby |
| Debtors. | ) | |
| | ) | Chapter 7 |

# **EXHIBIT A**

**EXHIBIT A TO DEBTORS' FINAL REPORT**

| Name: | Address: | Claim Date: | Invoice Date: | Invoice # | Amount: | Status: |
|---|---|---|---|---|---|---|
| ComEd | PO Box 6111, Carol Stream, IL 60197 | | 9/22/2011 | 7826805017 | $ 27.64 | Invoice was received by Estates on 10/3/11 (post-conversion); relates to property previously sold by Debtors. Represents purported costs in excess of pre-payments paid by Debtors prior to sale of property. |
| Continuum Development Services | 1505 Greer Lane Signal Mountain, TN 37377 | | 10/10/2011 | #1053 | $ 2,623.80 | Invoice was received by Estates on 10/10/11 (post-conversion); relates to services rendered and costs incurred assisting preparation of regulatory reports in excess of pre-payments paid by Debtors prior to sale of Debtors' campuses. |
| Downers Grove Sanitary District | 2710 Curtiss St. PO Box 1412 Downers Grove, IL 60515 | | 10/3/2011 | OC 2751 66507 | $ 651.88 | Invoice was received on 10/3/11 (post-conversion); relates to property previously sold by Debtors on 9/6/11. Prior to that sale, Debtors received a letter from Downers Grove Sanitary District identifying amounts owed by Debtors. All such amounts were previously paid. |
| Downers Grove Sanitary District | 2710 Curtiss St. PO Box 1412 Downers Grove, IL 60515 | | 10/3/2011 | OC 9043 02503 | $ 11.26 | Invoice was received by Estates on 10/10/11 (post-conversion); relates to property previously sold by Debtors. Represents purported costs in excess of pre-payments paid prior to sale of property. |
| Duane Morris LLP | Attn: Lauren Lonergan Taylor, Esquire, 30 South 17th Street, Philadelphia, PA 19103-4196 | 8/19/2011 | Multiple | 1637317, 1637444, 1647151, 1647152, 1653048, 1653050, and 1657137 | $ 2,286.54 | Subject to Debtors' Objection [Dkt. 448], which is set for hearing on 11/29/11 at 10:00 a.m. This amount is a request for payment of an administrative expense pursuant to 11 U.S.C. § 503(b)(1)(A). Duane Morris' claim included a prepetition unsecured claim in the amount of $5,271.86. |
| Illinois Dept. of Employment Security | 33 South State Street, Chicago, IL 60603 | 3/30/2011 | - | 4566252 | $ 233.70 | Disputed claim. Vibrant Living has no employees, has no payroll, and is not subject to unemployment taxes. |
| M&M Orthopaedics | 4115 Fairview Ave Downers Grove, IL 60515 | | 9/27/2011 | | $ 54.23 | Invoice was received by Estates on 10/13/11 (post-conversion). No claim was filed by administrative bar date. Thus, claim is time-barred. |
| Medline Industries, Inc. | Attn: Anne Kisha, One Medline Place, Mundelein, IL 60060 | 4/8/2011 | Multiple | 1046673629, 1046673624, 1046599551, 1046599550, 1046599545, 1046445538, and 1046414151 | $ 4,946.06 | Subject to Debtors' Objection [Dkt. 449], which is set for hearing on 11/29/11 at 10:00 a.m. The claim is a request for payment of an administrative expense pursuant to 11 U.S.C. § 503(b)(9). Debtors contend that entire debt was assumed and paid by Lifespace DG, LLC in connection with the sale of the Downers Grove Campus. |
| MPRO | 22670 Haggerty Road Suite 100 Farmington Hills, MI 48335 | | 7/5/2011 | R3VV0611C | $ 1,490.00 | Invoice was received by Estates on 10/13/11 (post-conversion). No claim was filed by administrative bar date. Thus, claim is time-barred. |
| Temperature Service Company, Inc. | 360 Bonnie Lane Elk Grove Village, IL 60007 | | 7/1/2011 | 91885 | $ 336.00 | Invoice was received by Estates on 10/13/11 (post-conversion). No claim was filed by administrative bar date. Thus, claim is time-barred. |
| Waste Link | One Northfield Plaza #300 Northfield, IL 60093 | | 7/13/2011 | 2558 | $ 181.37 | Invoice was received by Estates on 10/13/11 (post-conversion). No claim was filed by administrative bar date. Thus, administrative claim is time-barred. Invoice includes $723.44 balance forward of pre-petition service. The remaining $181.37 represents costs in excess of pre-payments paid prior to closing. |
| Yellow Pages | Attn: Justin Doerner, Collections Department, 2201 Renaissance Blvd, King of Prussia, PA 19406 | | | | $ 529.95 | This request was received after the administrative expense bar date of 8/15/11. Thus, it is barred by this Court's Order [Dkt. 349]. Even if the claim were timely filed, the claim is disputed. The Debtors requested that Yellow Pages discontinue services several times during the pendency of these cases. Debtors received no benefit or value from Yellow Pages' purported services, thus, Yellow Pages did not incur "actual, necessary costs and expenses ... preserving the estate." |
| | | | | **Total:** | **$ 13,372.43** | |

2039761-3